Kenneth Ray CLEMENTS v. STATE of Arkansas

CR 89-214                                          796 S.W.2d 839

Supreme Court of Arkansas
Opinion delivered October 8, 1990

*Watson Villines* and *Pamela Osment*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

DALE PRICE, Justice. On November 7, 1988, Conway Police Officer Ray Noblitt was shot and killed in the line of duty. The appellant was arrested for the crime and tried before a Faulkner County jury. The jury convicted him of capital murder and sentenced him to death by lethal injection. The appellant now seeks a reversal of his conviction. We find that the appellant was entitled to a mistrial because the prosecutor failed to provide the appellant, in a timely fashion, with the grand jury testimony of one of the state's witnesses. Therefore, we reverse and remand. To assist in the understanding of our decision, we set out the facts in detail.

The primary witness against the appellant was his wife, Denise Clements. According to Mrs. Clements, she and the appellant left home on the evening of November 7, 1988, with the intention of stealing a tractor and a trailer. They drove to a piece of property in Conway known as the old Dean Milk lot, which was used by the Loveless Tractor Company to store farm equipment. They had just hitched a trailer to the back of their truck when they were happened upon by Officer Noblitt. Mrs. Clements

warned her husband of the officer's presence, then climbed into the back of the truck. From there, she heard the appellant say, "Don't make me shoot you," or "Don't make me kill you." She then heard four to six gunshots. The appellant jumped into the truck and sped away from the scene. He stopped a few blocks away, unhitched the trailer and then drove on. He dropped Mrs. Clements off at their home and drove away, heading for his brother's house in Quitman. At trial, Mrs. Clements identified a .44 caliber pistol found by police in northern Falkner County as the one used by the appellant to kill Officer Noblitt.

The state also presented the testimony of other witnesses. Julie Nathe, Mrs. Clements' sister, was staying at the Clements' residence. She testified that the Clements left the house about 10 p.m. on the night of the murder to look for a trailer. When they returned home later that evening, Mrs. Clements ran into the house to retrieve a pistol and some cigarettes for the appellant, then stayed behind as the appellant drove away. Mrs. Nathe also identified the pistol, which the state contended was used to kill Officer Noblitt, as having belonged to the appellant.

At the scene of the crime, a Conway citizen Jackie McKinley, saw a pickup with a camper leaving the Dean Milk lot immediately after the shooting. Mr. McKinley investigated the scene, discovered Officer Noblitt, and used the police radio to summon help. The police department broadcast a description of the vehicle. Deputy C. B. Spangler, one of the many officers who were patrolling county roads after the shooting occurred, recognized the description of the vehicle as matching a vehicle owned by the appellant. While driving in the northern part of the county, Deputy Spangler saw the appellant on the side of the road standing outside his truck. The truck had a flat tire. The deputy kept the appellant under surveillance and kept him in sight until he eventually drove on to his brother's house. The house was kept under surveillance through the night.

The appellant eluded police at this point and was at large for four days. He was finally arrested in Jacksonville, driving a stolen truck, and was charged with capital murder.

Before the appellant was brought to trial, his case became part of a larger criminal investigation conducted by a Faulkner County grand jury. A great deal of testimony was heard by the

grand jury concerning the appellant's possible involvement in the murder of Officer Noblitt. Prior to trial, the appellant filed a discovery motion seeking the substance of any grand jury testimony relevant to his case. *See* A.R.Cr.P. Rule 17.1(b)(i). The trial court granted this motion on February 10, 1989, seven weeks before trial. However, on the morning trial was to begin, the appellant informed the court that he still had not received the grand jury testimony of two witnesses who were scheduled to testify. The prosecutor admitted that he had promised to provide the testimony, but said he had failed to order it from the court reporter. The appellant agreed to proceed with trial upon the prosecutor's promise that the grand jury testimony would be forthcoming. The prosecutor also assured the appellant that the missing grand jury testimony would not differ from statements which the witnesses had given to the police.

The state proceeded with its case-in-chief, and a Mr. Kenneth Varner was called to testify. Mr. Varner was one of those whose grand jury testimony had not yet been provided to the appellant. At trial, Mr. Varner testified that on the night of the murder, he observed a light-colored pickup which stopped in front of his house. The driver of the truck got out, unhitched a trailer, then drove away, leaving the trailer on the roadside. Mr. Varner positively identified the appellant as the driver of the truck. This in-court identification came as a surprise to the appellant. Mr. Varner's previous statement to police made no mention of the appellant's identity. Mr. Varner admitted on cross-examination that the first time he told anyone he could identify the appellant was a little more than a week before trial when he visited the prosecutor's office. He explained his failure to mention the appellant's identity to the police by saying that he hadn't been asked about it.

Two days after the jury heard Mr. Varner's trial testimony, the appellant received the transcript of Mr. Varner's grand jury testimony. The transcript revealed that, before the grand jury, Mr. Varner had affirmatively stated that he could not identify the driver of the pickup. When asked if he could tell anything about the person driving the vehicle, he responded, "not really, not as far as seein' or tellin' what color or anything like that of a person." Upon reading this testimony, the appellant asked for a mistrial, or, in the alternative, that the jury be admonished to disregard

Mr. Varner's trial testimony. He argued that the prosecution's failure to produce Mr. Varner's grand jury testimony in a timely manner prevented him from effectively impeaching Mr. Varner's in-court identification of him.

The court denied the mistrial motion but allowed the appellant to recall Mr. Varner as part of his own presentation of evidence. By the time the defense recalled Mr. Varner and confronted him with his grand jury testimony, eight days had passed since his trial testimony had been given. We find the court should have granted a mistrial.

We have said that information requested by a defendant in a discovery motion must be furnished in sufficient time to permit the beneficial use of it. *Lewis* v. *State*, 286 Ark. 372, 691 S.W.2d 864 (1985). Obviously, that requirement was not met here, but a prosecutorial discovery violation does not automatically result in reversal. *Morris* v. *State*, 302 Ark. 532, 792 S.W.2d 288 (1990). In this case, we must determine first if the appellant waived any violation by accepting the state's offer to provide the testimony later in the trial. Second, we must determine if the appellant suffered a prejudice so great as to warrant a mistrial.

The appellant's initial agreement to the delay in providing the grand jury testimony does not, under the particular facts of this case, constitute a waiver. The prosecutor knew that the testimony should have been provided to the appellant prior to trial, and he promised to obtain transcripts of the testimony as soon as possible. Meanwhile, he assured the appellant that the missing grand jury testimony would be consistent with the statements which the witnesses had given to police. In the case of Mr. Varner's testimony, this was not entirely true. In his statements to the police, Mr. Varner had merely said nothing about the identity of the pickup driver. Before the grand jury, he made an affirmative statement that he could not identify the pickup driver, even as to skin color.

Further, the prosecutor knew or should have known that Mr. Varner was about to give testimony in court that was wholly different than the testimony he had given the grand jury. The prosecutor had participated in the grand jury investigation and was aware of Mr. Varner's testimony before that body. The

prosecutor was also aware, by virtue of Mr. Varner's office visit, that he would identify the appellant at trial. So, while we certainly hesitate to say the appellant was deceived in any way, we will not hold him to his waiver. The waiver was made with the implied assurance that the grand jury testimony would contain no surprises, when in fact the state knew differently.

Next, we address the mistrial question. We have said that a mistrial is an extreme sanction for a discovery violation and is to be avoided unless the fundamental fairness of the trial itself is at stake. *Snell* v. *State*, 290 Ark. 503, 721 S.W.2d 628 (1986), *cert. denied*, 484 U.S. 872 (1987). For reasons we now set out, we find that, under the circumstances of this case, the appellant suffered the type of prejudice which could only have been cured by a mistrial.

The importance of Mr. Varner's testimony cannot be overstated. In a case based largely on circumstantial evidence, he directly connected the appellant to the crime. In addition, he cast great doubt on the appellant's defenses, which were: (1) that his wife, Denise, was the guilty party; (2) that others were there and were the guilty parties; and (3) that the state could not place appellant at the crime scene except by the testimony of Denise who, he contended, was an accomplice. These defenses could not hold up once the appellant was identified as the pickup driver. Mr. Varner was an unbiased witness, and was the only witness, other than Mrs. Clements, to place the appellant at the scene of the crime.

The state argues, citing *David* v. *State*, 295 Ark. 131, 748 S.W.2d 117 (1988) and *Lasley* v. *State*, 274 Ark. 352, 625 S.W.2d 466 (1981), that any prejudice to the appellant was abated since the appellant eventually confronted Mr. Varner with the grand jury testimony. The state is not correct. In *David* and *Lasley*, the appellant was provided with the missing statements in time to impeach the witness "on the spot." Here, the trial jury was unaware for eight days that it had heard a story from Mr. Varner which was totally inconsistent with the one he had told the grand jury.

Neither was the prejudice lessened by the appellant's use, for impeachment purposes, of Mr. Varner's statements to the police. As previously mentioned, the grand jury testimony, unlike the

statements, contained an affirmative declaration that Mr. Varner could not identify the pickup driver. In addition, the jury might well have accorded more weight to testimony given under oath before a grand jury.

Finally, we note that this case is not like *David* v. *State*, *supra*, in which the appellant neglected his own obligation to investigate. Two weeks before trial, the appellant's attorneys spoke with Mr. Varner and discovered nothing to indicate he would identify the appellant in court. The combination of all these circumstances leads us to conclude a mistrial should have been granted.

Most of the other issues presented by the appellant may not arise in the same manner upon remand, so we will not address them. However, strictly for the purpose of guiding the trial court, we will address one problem which is likely to recur. Prior to trial, the appellant asked that his wife be declared an accomplice as a matter of law, such that her testimony must be corroborated to sustain his conviction. *See* Ark. Code Ann. § 16-89-111(e)(1) (1987). The trial court declined to do so and instead allowed the jury to decide whether or not Mrs. Clements was an accomplice. We agree that the evidence as presented at trial does not conclusively show Mrs. Clements was an accomplice to the murder.

A person may be liable for the conduct of another person if he is an accomplice of another person in the commission of an offense. Ark. Code Ann. § 5-2-402(2) (1987). Mrs. Clements, under the definition contained in Ark. Code Ann. § 5-2-403 (1987), was clearly an accomplice to the theft of the tractor and trailer. But her complicity in the murder is not so obvious. The evidence, as developed to this point, does not show indisputably that Mrs. Clements aided her husband in the commission of the murder. *See Scherrer* v. *State*, 294 Ark. 287, 742 S.W.2d 884 (1988). Neither does the evidence show, as a matter of law, that Mrs. Clements should share responsibility for the murder on the theory that the murder was a natural and probable consequence of the theft. *See* Original Commentary to Ark. Code Ann. § 5-2-403; 2 W. LaFave & A. Scott, *Substantive Criminal Law*, § 6.8 at 157-58 (1986). Finally we note that Mrs. Clements cannot be considered an accomplice on the basis that she participated in an

offense which was an underlying felony in a capital murder charge. The appellant was not charged with capital murder on the ground that he committed murder in the course of a felony; he was charged on the ground that he allegedly murdered a law enforcement officer. *See* Ark. Code Ann. § 5-10-101(a)(3) (Supp. 1989). In any event, the crime of theft is not listed in the capital murder statute as an underlying offense which would support a capital murder charge. *See* Ark. Code Ann. § 5-10-101(a)(1) (Supp. 1989).

We recognize that, upon retrial, the evidence may differ concerning Mrs. Clements' level of participation in the crime. We address this point only to aid the trial court in making a decision on the issue, should it arise again.

Reversed and remanded.

HAYS AND GLAZE, JJ., dissent.

STEELE HAYS, Justice, dissenting. I cannot agree that the appellant has shown prejudicial error from the state's belated delivery of the Varner statement to the defense. Admittedly Varner's testimony had some ambivalence as to what he saw and could remember from the night of the murder, but he admitted these discrepancies and although it is alleged the state knowingly misled the defense by representing that his trial testimony would not materially vary from his grand jury testimony, that knowledge has not been demonstrated. In complex cases, as this one is, it is almost inevitable that some oversights occur. An accused is entitled to a fair trial, not a perfect one, and it has not been shown that this appellant received less than that. *Womack* v. *State*, 301 Ark. 193, 783 S.W.2d 33 (1990). He was able to effectively show the jury that there were inconsistencies between Kenneth Varner's trial and grand jury testimony and that should suffice. The direct and circumstantial evidence of the appellant's guilt is clear and convincing and the judgment should be affirmed.

GLAZE, J., joins this dissent.

TOM GLAZE Justice, dissenting. The majority reverses appellant's jury verdict because it says the prosecutor failed to timely provide appellant with the grand jury testimony of one of the state's key witnesses, Kenneth Varner. Before the grand jury, Varner had said that he could not really tell anything about the

person he saw at the crime scene. However, at trial, Varner directly identified the appellant as the man he saw leaving the scene of the crime.

While a discrepancy existed between Varner's grand jury and trial court testimony, appellant was fully aware of that discrepancy in Varner's identification of appellant before trial. In fact, when Varner testified for the state and identified the appellant as the man he saw leaving the crime, appellant's attorney cross-examined Varner on this very identification issue. In doing so, appellant used a statement Varner had made to the prosecutor only twenty-two days after the crime. Appellant's attorney had that statement introduced into evidence and it reads as follows:

> (T)here was a street light there that made it possible for me to see that there was a trailer behind the pickup truck. I could not see if there was a person behind the truck, but I saw a person get into the driver's side of the pickup truck, about that time. The truck took off driving fast and reckless, turning south on Gum Street, and went toward Highway 64.

Nowhere is this statement does Varner suggest that he could describe or identify the person he saw get into the truck. The appellant's attorney did an excellent job bringing out this point during his cross-examination and made Varner admit that the first time he told anyone he could identify the appellant was a little more than a week before trial when he visited the prosecutor's office. Further, the appellant specifically asked Varner why it was not in his statement that he could identify the person, to which, Varner replied he was not asked.

Again, appellant's attorney, during the state's case-in-chief, did an exceptional job in impeaching Varner's testimony that placed appellant at the crime scene. But that was not the end of it. After given the grand jury testimony during trial, he recalled Varner and cross-examined him once again on the identification discrepancy contained in Varner's statements. The jury had a full disclosure of the inconsistencies of Varner's statements about what he was able to see.

This court has said that it will not reverse for errors that do

not affect the essential fairness of a trial. *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 434 (1984), *cert. denied*, 470 U.S. 1085 (1985). We have also held that a defendant must demonstrate that prejudice resulted from the state's failure to comply with its discovery obligations. *See Scherrer* v. *State*, 294 Ark. 227, 742 S.W.2d 877 (1988). Here, appellant never showed prejudice and the majority court's reversing and sending this case back for another trial is wrong. I would affirm the trial court's decision.