SLIP OPINION

Cite as 2014 Ark. 294

# SUPREME COURT OF ARKANSAS

No. CR–13–686

| | |
|---|---|
| DONNIE MAIDEN<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered June 26, 2014<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, [NO. CR-12-578]<br><br>HONORABLE WENDELL L. GRIFFEN, JUDGE<br><br><u>AFFIRMED</u>. |

## JIM HANNAH, Chief Justice

Appellant, Donnie Maiden, was convicted of premeditated and deliberate capital murder and was sentenced to a term of life imprisonment without parole.[1]  The conviction arose as a result of the shooting death of Kylaus Williams.  On appeal, Maiden contends that (1) the circuit court abused its discretion when it prevented him from impeaching Tim Bradley with his prior acts of untruthfulness; (2) the circuit court abused its discretion when it prevented him from impeaching Trenell Emerson with his prior inconsistent statements; (3) the circuit court erred in denying his motion for mistrial based on discovery violations; (4) the overlap of Arkansas Code Annotated sections 5-10-101(a)(4) and 5-10-102(a)(2) (Repl. 2013) violates article 2, section 3, of the Arkansas Constitution; (5) the circuit court committed reversible error when it ridiculed defense counsel in the jury's presence; and (6)

---

[1]The State waived the death penalty.

SLIP OPINION

the circuit court abused its discretion when it failed to conduct a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) before admitting expert testimony about a palm print found at the scene of the murder and identified as Maiden's. Because this is a criminal appeal in which a sentence of life imprisonment without parole has been imposed, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(2) (2013). We affirm the circuit court.

Because Maiden does not challenge the sufficiency of the evidence against him, only a brief recitation of the facts is necessary. On November 7, 2011, Williams's body was found at 6907 Highway 161 in Pulaski County; the cause of death was multiple gunshot wounds. As a result of its investigation into Williams's death, the Pulaski County Sheriff's Office developed Maiden and Emerson as suspects, and they were later arrested at an Arizona bus station. Both were charged with capital murder.

The testimony adduced at Maiden's trial reveals that on November 7, Tim Bradley and Williams, along with Bradley's cousin, Leroy Butler, drove to a motel, where they picked up Maiden and Emerson. The five drove to another hotel, and Bradley exited the car to purchase a drink from a nearby convenience store. While he was gone, Williams left to sell some marijuana for Maiden. As they were waiting to hear from Williams, Butler left.

Williams later called and reported that he had been robbed and asked them to pick him up. Maiden drove, Emerson was in the seat behind him, and Bradley was in the passenger's seat. After arriving at Williams's location, Maiden joined Emerson in the backseat of the car, and Williams drove the four of them to "B. house" at Maiden's request. Upon their arrival

2

at B. house, Williams stopped the car and Bradley began to exit the car to use the restroom. Maiden then opened his door to exit the car and shot Williams, and Bradley took off running. Maiden dragged Williams's body out of the car, and he and Emerson left the scene.

Maiden and Emerson eventually abandoned the car and ran. Maiden then called a taxi, which took him and Emerson to a hotel in downtown Little Rock. Subsequently, they bought bus tickets and boarded a Greyhound bus to California. Using the cell phone number that the men had used to register at the hotel, Arkansas police tracked the GPS coordinates of the phone and were able to determine the men's location. The bus was stopped by police in Phoenix, Arizona, and the men were taken into custody by the Phoenix police.

Maiden first contends that the circuit court abused its discretion by preventing him from impeaching Tim Bradley, a witness for the State, with his prior acts of untruthfulness. Specifically, Maiden contends that the circuit court abused its discretion when it would not allow him to impeach Bradley with evidence of a pending charge for theft and providing a false name to police. According to Maiden, this evidence was admissible pursuant to Arkansas Rule of Evidence 608(b) (2013) to show that Bradley had lied during voir dire when he testified that the charge had been dismissed.

The State counters that, because Rule 608(b) is intended to be restrictive, the circuit court did not act arbitrarily or groundlessly by refusing to permit Bradley's cross-examination with either the pending theft charge or his testified belief that the charge had been dismissed. The State asserts that this court has long held that evidence of previous thefts are not probative of truthfulness and, thus, Bradley could not have been impeached with the theft

SLIP OPINION

charge. Moreover, according to the State, any misunderstanding on Bradley's part regarding the status of any charge against him was not evidence that he was lying.

The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse that decision absent a manifest abuse of discretion. *E.g.*, *Laswell v. State*, 2012 Ark. 201, at 17, 404 S.W.3d 818, 828. The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *E.g.*, *Grant v. State*, 357 Ark. 91, 93, 161 S.W.3d 785, 786 (2004). In addition, we will not reverse a ruling on the admission of evidence absent a showing of prejudice. *E.g.*, *Davis v. State*, 350 Ark. 22, 38, 86 S.W.3d 872, 882 (2002).

Rule 608(b) states:

> (b) Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

This court has interpreted Rule 608 to permit inquiries on cross-examination into conduct that is clearly probative of truthfulness or untruthfulness but to disallow cross-examination into specific instances that are merely probative of dishonesty. *E.g.*, *Bailey v. State*, 334 Ark. 43, 56, 972 S.W.2d 239, 246 (1998). This court has adopted a three-part test for admissibility: (1) the question must be asked in good faith, (2) the probative value must outweigh its prejudicial effect, and (3) the prior conduct must relate to the witness's

truthfulness. *Id.*, 972 S.W.2d at 246.

In the instant case, before cross-examination of Bradley, defense counsel asked to voir dire Bradley about his prior conviction for theft. During voir dire, Bradley admitted that he had been arrested in 2009 for theft or shoplifting in Louisiana, but he testified that the charge had been dismissed, that he never had to pay a fine, and that he had not been incarcerated or placed on probation. Based on Bradley's testimony that he had no prior conviction, defense counsel conceded that he had no basis for extrinsic proof to impeach Bradley under Arkansas Rule of Evidence 609(a)(2) (2013).[2] Defense counsel did state, however, that his position might change if further evidence developed.

Later in the trial, defense counsel proffered a letter from the City Court of Monroe, Louisiana, stating that Bradley has a case "open and pending" there involving charges of theft and resisting an officer by refusing to give a name. Because the theft charge had not been dismissed, as Bradley had testified, defense counsel moved to impeach Bradley under Rule 608(b). That motion was denied. Defense counsel renewed the motion later in trial and proffered the Louisiana information charging Bradley with theft and resisting an officer by refusing to give a name, as well as the testimony of the arresting officer.

The circuit court did not abuse its discretion in refusing to permit defense counsel to impeach Bradley under Rule 608(b). Even assuming that defense counsel's inquiries about prior conduct were asked in good faith and that the probative value outweighed the

---

[2]Rule 609(a)(2) states that, for the purpose of attacking the credibility of a witness, evidence that a witness has been convicted of a crime shall be admitted if the crime involved dishonesty or false statement, regardless of the punishment. Ark. R. Evid. 609(a)(2).

prejudicial effect, *see Bailey*, 334 Ark. at 56, 972 S.W.2d at 246, Maiden fails to demonstrate that the prior conduct relates to Bradley's truthfulness. The evidence offered by Maiden to impeach Bradley was a letter stating that Bradley had a pending case involving charges of theft and failure to give his name to a police officer.[3] We cannot say that this letter offered sufficient proof that Bradley lied during his prior testimony. Moreover, even if Bradley had a pending theft charge, Maiden would not be allowed to impeach him on this basis. This court has held that evidence about a witness's prior theft is not probative of truthfulness. *E.g.*, *Watkins v. State*, 320 Ark. 163, 167, 895 S.W.2d 532, 535 (1995). The circuit court did not abuse its discretion in refusing to allow defense counsel to impeach Bradley under Rule 608(b).

In his second point on appeal, Maiden contends that the circuit court abused its discretion by preventing him from impeaching the sole eyewitness, Trenell Emerson, with his prior inconsistent statements. During cross-examination, when asked about statements he had made to Detective Jay Massiet, Emerson either denied, or could not recall, having made several statements. Maiden then tried to impeach Emerson by having him review the transcribed statement; however, Emerson stated that nothing in the statement looked like anything he had said. As a result, during Massiet's cross-examination, Maiden tried to impeach Emerson's testimony by having Massiet confirm that Emerson had made the

---

[3]Relying on *McKinnon v. State*, 287 Ark. 1, 695 S.W.2d 826 (1985), Maiden contends that the circuit court abused its discretion in refusing to allow him to cross-examine Bradley about the use of a false name. This is raised for the first time on appeal, and, notably, Bradley was never questioned by defense counsel about any charge related to his failure to give his name to a police officer.

statements. The circuit court sustained the State's hearsay objection. Relying on Arkansas Rule of Evidence 613(b) (2013), as applied in *Scamardo v. State*, 2013 Ark. 163, 426 S.W.3d 900, Maiden contends that the circuit court abused its discretion by refusing to allow him to impeach Emerson with extrinsic evidence of prior inconsistent statements.

The State counters that the circuit court did not abuse its discretion in denying Maiden's attempt to elicit the testimony from Massiet because any inconsistencies in Emerson's statements were brought out during his testimony, and it was not necessary to further question Massiet to present a veracity issue to the jury. The State points out that Emerson repeatedly admitted that he had lied to investigators.

As previously stated, we review the circuit court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Laswell*, *supra*. Rule 613(b) states that

> [e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or if the interests of justice otherwise require.

Thus, pursuant to Rule 613(b), three requirements must be met before extrinsic evidence of a prior inconsistent statement is admissible: (1) the witness must be given the opportunity to explain or deny the inconsistent statement; (2) the opposing party must be given the opportunity to explain or deny the witness's inconsistent statement; and (3) the opposing party must be given the opportunity to interrogate the witness about the inconsistent statement. However, this court has held that when the witness admits having made the prior inconsistent statement, Rule 613(b) does not allow introduction of extrinsic

evidence of the prior statement to impeach the witness's credibility. *See Yankaway v. State*, 366 Ark. 18, 21, 233 S.W.3d 136, 139 (2006).

In analyzing the application of Rule 613(b), this court in *Scamardo* stated that when a witness is asked about a prior statement and either denies having made it or fails to remember having made it, extrinsic evidence of the prior statement is admissible. We explained that impeachment of a witness by introducing extrinsic evidence of a prior inconsistent statement through the testimony of a second witness or through the admission of documentary evidence, regardless of whether the statement was given under oath, must be allowed, otherwise Rule 613(b) would have no meaning. *Scamardo*, 2013 Ark. 163, at 9, 426 S.W.3d at 905.

Here, Maiden sought to impeach Emerson by demonstrating that he had given different statements to Massiet about possessing marijuana, the purpose for buying guns, and who had hired a cab when Emerson and Maiden were escaping. At trial, Emerson testified that he did not possess any marijuana but subsequently admitted having one pound of it. Emerson also testified that he bought guns in Arkansas to sell in California but that he could not remember giving Massiet such information. Finally, when asked whose idea it was to get off the Greyhound bus in Arizona and to catch a cab, Emerson answered, "We found somebody." On cross-examination, Emerson testified that it was actually Maiden's idea to catch a cab but denied any recollection of telling Massiet that he did not remember if it was Maiden's idea or his brother's idea.

Although Maiden is correct that he complied with Rule 613(b), because Emerson was

asked about the prior statements and both sides were given the opportunity to raise questions about the inconsistent statements, he has failed to demonstrate prejudice that warrants reversal. Emerson's testimony was riddled with inconsistencies, and he even admitted having given false prior statements; thus, Maiden was not denied the opportunity to call Emerson's veracity into question and to challenge his credibility before the jury. This court recognized in *Kennedy v. State*, 344 Ark. 433, 445, 42 S.W.3d 407, 415 (2001), that once a witness acknowledges having made a prior inconsistent statement, the witness's credibility has successfully been impeached. In other words, "[a]n admitted liar need not be proved to be one." *Id.*, 42 S.W.3d at 415 (quoting *Ford v. State*, 296 Ark. 8, 18, 753 S.W.2d 258, 263 (1988)).

Likewise, Maiden has failed to demonstrate that our holding in *Scamardo* requires reversal in the instant case. The challenged inconsistency in *Scamardo* involved a prior statement by the victim about whether she was being truthful about the accusations against the defendant. Here, the inconsistencies regarded collateral matters, and Maiden was able to show that Emerson had made inconsistent statements. The circuit court did not abuse its discretion in refusing to allow Maiden to impeach Emerson with prior inconsistent statements.

Maiden next contends that the circuit court erred in denying his motion for mistrial, which was based on alleged discovery violations by the State. He maintains that the State failed to timely disclose to him that Emerson would provide testimony at trial that was inconsistent with a prior statement he had made to police. Specifically, he points to Emerson's

9

testimony at trial that he had actually witnessed Maiden shoot Williams, which contradicted his prior statement to police and was disclosed by the State, that he was at the side of the house when the shots were fired. He claims that the change in Emerson's testimony was both material and prejudicial because it was not discovered until after Emerson had testified and that the circuit court's attempt to cure any prejudice was insufficient. The State contends that the circuit court did not abuse its discretion in denying Maiden's mistrial motion because he cannot show that the omission was sufficient to undermine the confidence in the outcome of the trial.

The decision to grant or deny a motion for mistrial is within the sound discretion of the trial court and will not be overturned absent a showing of abuse or manifest prejudice to the appellant. *E.g.*, *Johnson v. State*, 366 Ark. 8, 13, 233 S.W.3d 123, 127 (2006). A mistrial is a drastic remedy and should be declared only when there is error so prejudicial that justice cannot be served by continuing the trial, and when it cannot be cured by an instruction to the jury. *E.g.*, *Tryon v. State*, 371 Ark. 25, 42, 263 S.W.3d 475, 488 (2007). With respect to motions for mistrial based on Arkansas Rule of Criminal Procedure 17.1, we have observed that a mistrial is an extreme sanction for a prosecutorial discovery violation and is to be avoided unless the fundamental fairness of the trial itself is at stake. *See Thompson v. State*, 322 Ark. 586, 589, 910 S.W.2d 694, 696 (1995).

At trial, Emerson testified that he had witnessed Maiden shoot Williams. He further testified that when he provided his statement in Arizona, he was not telling the truth when he stated that he was not in the car when the shots were fired. On cross-examination,

Emerson admitted that when he spoke with officers in Arizona, he was lying when he told them that he had been at the side of the house. The next day, outside the presence of the jury, counsel for Maiden moved for a mistrial, asserting that the defense had learned after Emerson had testified that Emerson had given the prosecuting attorney a statement a week-and-a-half before trial that was consistent with his testimony but inconsistent with his prior statement to Arizona police. Maiden contended that the recent statement had not been disclosed by the State, in violation of Rule 17.1.

The State responded that it was not required to disclose Emerson's recent statement because it was work product and, thus, it had to be disclosed only if it was written or recorded. However, after a brief recess to research the issue, the State acknowledged that it should have provided the change in Emerson's statement to the defense. The State apologized for its mistake and asserted that its failure to disclose the information was in no way intentional. The circuit court then held a brief evidentiary hearing, at which Lloyd Warford, counsel for Emerson, confirmed that he had been with Emerson days before when Emerson gave a statement to the prosecution and that Emerson changed his story from being at the side of the house when the shooting occurred to being in the car and seeing Maiden fire the weapon. Warford also confirmed that he had not informed Maiden's counsel about the change in the statements.

Maiden argued to the circuit court that he was prejudiced by the prosecution's failure to disclose because his defense was unable to adequately prepare for Emerson's cross-examination. In addition, Maiden claimed that he was prejudiced by the discovery violation

because his defense was premised on the fact that there had been no eyewitness to the shooting and that defense counsel had emphasized in his opening statement that "no one is going to get on this witness stand and tell you they saw it."

The circuit court found that the prosecution had an obligation under Rule 17.1(a) to disclose to Maiden's defense counsel that Emerson had made a statement that was inconsistent with his original statement relating to his presence at the time of the shooting. The circuit court found that the inconsistency in the statements was material and that the State's failure to disclose the inconsistency was prejudicial because "the inability to know about this certainly had a bearing on whether or not the defense would have been able to anticipate before Trenell Emerson testified that he would testify in a way different from his previously disclosed statements." The circuit court then found that there was a remedy to cure any prejudice and outlined the steps that would be taken to execute that remedy:

> The Court believes that it can cure the prejudice by (A) requiring the State to re-call Trenell Emerson, disclose the prior inconsistent statement, disclose the fact that it did not inform defense counsel about the change in statement until after the trial began and disclose the fact that the new statement is, in fact, inconsistent with the prior statement.
>
> The defense will then have ample opportunity to cross-examine Trenell Emerson on both the prior inconsistent statement and the changed statement.
>
> There was cross-examination yesterday about the inconsistency, but I'm giving you a chance for additional cross-examination in view of the disclosures made this morning.
>
> I will inform the jury that they are to remember my instruction that arguments of counsel during opening statement and remarks during trial are not evidence, and that will be the cure for the prejudice.

In addition, the circuit court informed both sides that it would have a record of the

hearing sent to the Supreme Court Committee on Professional Conduct. The circuit court then denied Maiden's motion for mistrial.

Upon the jury's return to the courtroom, the circuit court reminded the jury of its instruction at the beginning of the trial "that statements of counsel or remarks of the attorney during opening statements and remarks during the trial are not evidence and they're not to be treated . . . as evidence." In accordance with the circuit court's ruling, the prosecutor then told the jury that the change in Emerson's testimony "from being outside the car and then inside the car witnessing this was not informed to defense counsel . . . until Emerson testified on the stand yesterday." The State then recalled Emerson, who reemphasized in his testimony that he had lied to the Arizona police about being outside the car when Williams was shot. On cross-examination, he testified that the first time he told the prosecutors that he had been in the car during the shooting was three days before trial.

There is no dispute among the parties that the State's failure to disclose the change in Emerson's statements to the defense was a violation of Rule 17.1(a), which provides, in relevant part, that

> [s]ubject to the provisions of Rules 17.5 and 19.4, the prosecuting attorney shall disclose to defense counsel, upon timely request, the following material and information which is or may come within the possession, control, or knowledge of the prosecuting attorney:
>     . . .
>     (ii) any written or recorded statements and the substance of any oral statements made by the defendant or a codefendant.

Ark. R. Crim. P. 17.1(a)(ii). We have held that the purpose of the discovery rules is to require the State to disclose its evidence to the defendant in time for the defendant to make

13

SLIP OPINION

beneficial use of the information. *E.g.*, *N.D. v. State*, 2011 Ark. 282, at 10, 383 S.W.3d 396, 401. The key to determination for a reversible discovery violation is whether the appellant was prejudiced by the prosecutor's failure to disclose. *E.g.*, *Bray v. State*, 322 Ark. 178, 180, 908 S.W.2d 88, 89 (1995). If the State does not provide information pursuant to pretrial discovery procedures, the burden is on the appellant to establish that the omission was sufficient to undermine confidence in the outcome of the trial. *Id.*, 908 S.W.2d at 89.

Maiden claims that the relief granted by the circuit court to cure any prejudice resulting from the State's failure to disclose was insufficient. We disagree. Pursuant to Arkansas Rule of Criminal Procedure 19.7(a) (2013),

> [i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or with an order issued pursuant thereto, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems proper under the circumstances.

Although defense counsel did state in the opening statement that "you're never going to hear anyone throughout the entire course of this trial say that they saw Donnie Maiden shoot Kylaus Williams," it is clear from the record that the circuit court took great pains to ensure that any prejudice was cured by instructing the jury multiple times that the statements of counsel were not evidence, by requiring the State to admit and stipulate to the jurors that it had not informed defense counsel of the change in Emerson's statements, and by providing Maiden an additional opportunity to cross-examine Emerson about the change in his testimony. Moreover, it is well within the circuit court's discretion which sanction to employ. *E.g.*, *Reed v. State*, 312 Ark. 82, 88, 847 S.W.2d 34, 37 (1993).

14

Maiden additionally cites this court to *Clements v. State*, 303 Ark. 319, 796 S.W.2d 839 (1990); however, his reliance on that decision is misplaced. In *Clements*, the State failed to turn over to the defense a witness's grand-jury testimony, which conflicted with his in-court identification of the appellant. *Id*. at 320–23, 796 S.W.2d at 840–42. This court held that, under the circumstances of the case, the circuit court wrongly denied Clements's motion for mistrial because the appellant suffered the type of prejudice that could be cured only by a mistrial. *Id*. at 324–25, 796 S.W.2d at 842–43. The court noted that the witness was an unbiased witness, and the only witness, other than the appellant's wife, an alleged accomplice, to place the appellant at the scene of the crime. *Id*. at 325, 796 S.W.2d at 843. In addition, this court rejected the State's claim that any prejudice was abated by the appellant's eventual confrontation of the witness with his grand-jury testimony because the "trial jury was unaware for eight days that it had heard a story from [a witness] which was totally inconsistent with the one he had told the grand jury." *Id*. at 324, 796 S.W.2d at 843.

In the instant case, Emerson testified on April 9, and counsel for Maiden moved for mistrial the next day. After denying the motion for mistrial, the circuit court immediately effectuated its ruling and reinstructed the jury regarding the statements of counsel. The State then had to admit its failure to disclose, on the record and in front of the jury, and Emerson was recalled for further examination by both sides. Further, Emerson was not an unbiased witness like the witness in *Clements*. Rather, Emerson was Maiden's codefendant.

The burden is on Maiden to show that the State's failure to disclose Emerson's subsequent statement was sufficient to undermine the outcome of his trial. *E.g.*, *Lee v. State*,

15

340 Ark. 504, 509–10, 11 S.W.3d 553, 556 (2000).  Based on the foregoing, we cannot say that Maiden has sustained that burden.  As already noted, a mistrial is a drastic remedy and appropriate only when the error is beyond repair and cannot be corrected by any curative relief.  *E.g.*, *Henry v. State*, 337 Ark. 310, 318, 989 S.W.2d 894, 898 (1999).  We do not believe that to be the case here, and we affirm the circuit court's denial of Maiden's motion for mistrial.

Maiden contends in his fourth point on appeal that the overlap of Arkansas Code Annotated section 5-10-101(a)(4), capital murder,[4] and section 5-10-102(a)(2), first-degree murder,[5] violates article 2, section 3, of the Arkansas Constitution. According to Maiden, the "same conduct constitutes capital murder and first-degree murder," and the only difference between the two offenses is that capital murder and first-degree murder prescribe different punishments. Maiden argues that this statutory scheme denies him equal protection of the law because it "creates two classes of similarly-situated individuals that differ only in arbitrary charging decisions."

This court has rejected the claim that our statutory scheme creates an arbitrary classification in violation of the Equal Protection Clause of the United States Constitution. *See Rankin v. State*, 329 Ark. 379, 948 S.W.2d 397 (1997); *Miller v. State*, 273 Ark. 508, 621

---

[4]A person commits capital murder if, with the premeditated and deliberated purpose of causing the death of another person, the person causes the death of any person. Ark. Code Ann. § 5-10-101(a)(4).

[5]A person commits first-degree murder if, with a purpose of causing the death of another person, the person causes the death of another person. Ark. Code Ann. § 5-10-102(a)(2).

S.W.2d 482 (1981). In *Miller,* we stated:

> Petitioner asserts a denial of equal protection of the laws, because the prosecuting attorney may charge either capital felony murder or first-degree murder when the murder is committed in the perpetration of robbery or six other specified felonies. *Cromwell v. State,* 269 Ark. 104, 598 S.W.2d 733 (1980). Essentially the same argument was rejected with respect to overlapping federal offenses in *United States v. Batchelder,* 442 U.S. 114 (1979). There the court held that where two federal statutes authorized different ranges of punishment for the same conduct, the prosecutor's discretionary decision to proceed under the more severe statute did not involve a denial of due process or equal protection.

*Id.* at 510, 621 S.W.2d at 483.

Maiden concedes that the issue is settled under federal constitutional law, but he contends that this court should conclude that the Arkansas Constitution offers him a higher level of protection. Specifically, Maiden asserts that this court should declare the overlapping statutory scheme a violation of article 2, section 3, of the Arkansas Constitution[6] and "guard against unfettered prosecutorial discretion resulting in arbitrary decisions."

On occasion, this court will provide more protection under the Arkansas Constitution than that provided by the federal courts under the United States Constitution. *See, e.g., Polston v. State,* 360 Ark. 317, 330, 201 S.W.3d 406, 413 (2005). We have stated that one pivotal inquiry in this regard is whether this court has traditionally viewed an issue differently than the federal courts. *Id.,* 201 S.W.3d at 413. Maiden does not contend that this court has traditionally viewed equal protection differently than the federal courts. Rather, in support

---

[6]Article 2, section 3, of the Arkansas Constitution states: "The equality of all persons before the law is recognized, and shall ever remain inviolate; nor shall any citizen ever be deprived of any right, privilege or immunity; nor exempted from any burden or duty, on account of race, color or previous condition."

of his argument, Maiden cites to cases in other jurisdictions in which state courts have rejected the reasoning in *Batchelder* to hold that their respective state constitutions were violated by overlapping criminal statutes with differing penalties. *See People v. Marcy*, 628 P.2d 69 (Colo. 1981); *State v. Hoang*, 947 P.2d 360 (Haw. 1997); *State v. Clements*, 734 P.2d 1096 (Kan. 1987). But he does not explain why those cases have any bearing, even as persuasive authority, on whether the statutes at issue violate the Arkansas Constitution. This court will not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing support, and it is not apparent without further research that the argument is well-taken. *E.g.*, *Hollis v. State*, 346 Ark. 175, 179, 55 S.W.3d 756, 759 (2001).

In his fifth point on appeal, Maiden contends that the circuit court committed reversible error when it ridiculed defense counsel in the jury's presence. According to Maiden, the circuit court interrupted defense counsel's cross-examination of Marlon Smith to admonish defense counsel for "talking over" the witness and made extremely harsh and unprofessional comments, calling defense counsel's intelligence into question. Although Maiden acknowledges that he failed to object to the circuit court's comments at trial, he asserts that the comments prejudiced the jury against him and that the error is of the type that should be addressed by this court pursuant to the third exception provided in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980).

In response, the State contends that Maiden failed to preserve any error for appellate review because he did not contemporaneously object to the court's statements. Moreover,

the State maintains that Maiden fails to demonstrate how the court's comments, which were directed at both defense counsel and the State, as well as at some witnesses throughout the trial, would fall under the third exception outlined in *Wicks*.

The specific comments made by the circuit court that Maiden claims constitute reversible error are as follows:

| | |
|---|---|
| THE COURT: | I'm not going to make this speech again. If I cannot get people to stop talking at the same time, I'm going to let the jury go home and you all can just look at each other and talk together, but I'm not going to extend the trial past Thursday and I'm not going to hold the jury past 5:30. You're either going to learn how to obey the kindergarten rule that a five-year-old can obey or stop talking when witnesses are talking; is that clear? |
| DEFENSE COUNSEL: | It's clear. |
| THE COURT: | Is it crystal clear? |
| DEFENSE COUNSEL: | Yes, Your Honor. |
| THE COURT: | I want it to be real fast ball high and tight crystal clear. Mr. Smith – – |
| WITNESS: | Yes, sir, Your Honor. |
| THE COURT: | [Defense counsel], when he's talking, don't say anything. When I'm talking, nobody says anything. Five-year-old children in a room with one person can obey this. It befuddles me that *people* who have gone to law school can't do it. Please prove *yourselves* capable of obeying what a five-year-old can do. *Both sides* have been doing this. Stop it. |

(Emphasis added.)

It is well settled that a contemporaneous objection is required to preserve an issue for appeal, but this court has recognized four exceptions to the rule, known as the *Wicks*

19

exceptions. *Springs v. State*, 368 Ark. 256, 260–61, 244 S.W.3d 683, 686–87 (2006). These exceptions occur when (1) a trial court, in a death-penalty case, fails to bring to the jury's attention a matter essential to its consideration of the death penalty itself; (2) a trial court errs at a time when defense counsel has no knowledge of the error and thus no opportunity to object; (3) a trial court should intervene on its own motion to correct a serious error; and (4) the admission or exclusion of evidence affects a defendant's substantial rights. *Id.*, 224 S.W.3d at 686–87.

The third exception is a narrow one, and it has rarely been applied. In *McKenzie v. State*, 362 Ark. 257, 277, 208 S.W.3d 173, 184 (2005), we reaffirmed the narrow application of the third exception, stating it has only been applied only when a defendant's fundamental right to a trial by jury is at issue. We noted in *Anderson v. State* that the third *Wicks* exception applies when "the error is so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury correctly[.]" 353 Ark. 384, 395, 108 S.W.3d 592, 599 (2003).

We cannot say that the statements by the circuit court constituted error, let alone error of such a serious nature as to warrant review pursuant to *Wicks*. As the State points out, the circuit court did not admonish only defense counsel—it also cautioned the State and several witnesses to follow the "kindergarten rule" when someone else is speaking. Moreover, the circuit court's comments were intended to maintain the decorum and dignity of the court proceeding. Reversible error occurs when an unmerited rebuke by the circuit court gives the jury the impression that counsel is being ridiculed. *E.g.*, *McDaniel v. State*, 283

Ark. 352, 357, 676 S.W.2d 732, 735 (1983). But this court will not reverse when the circuit court's comments reveal mere irritation at counsel's trial tactics. *Id.* at 357, 676 S.W.2d at 735–36.

In this case, the circuit court was clearly irritated that it had to keep reminding counsel and witnesses not to talk over each other, but, as previously noted, the circuit court's statements were not focused just on defense counsel's conduct. As such, the statements were not any more prejudicial to the defense than to the State or its witnesses. This court has stated that

> [a] Circuit Judge presiding at a jury trial should not be a mere automaton on the bench, exerting no control over what goes on before him. He should be more than a moderator who keeps order while counsel do and say what they please before the jury. It is his duty to see not only that the trial proceeds in accordance with law, but that it proceeds efficiently and effectively, and in keeping with the ends of justice.

*Fuller v. State*, 217 Ark. 679, 682, 232 S.W.2d 988, 989 (1950). Maiden has failed to demonstrate that the circuit court's comments warrant reversal.

Maiden's final point on appeal is that the circuit court abused its discretion in failing to conduct a *Daubert* hearing before admitting expert testimony about a palm print that was found on the vehicle in which the victim had been killed. At trial, Wesley Sossamon, a latent-print examiner with the Arkansas State Crime Lab, testified that the print belonged to Maiden. Appellant argues on appeal that this court should reverse and remand because the palm print—the sole physical evidence against him—was introduced without review of the reliability of the scientific procedures supporting that evidence.

The State responds that this court need not address Maiden's argument because he

failed to get a ruling on the merits of the issue. We agree. On April 1, 2013, eight days before the trial began, appellant filed a motion in limine to exclude expert testimony relating to the palm print pursuant to *Daubert*. Appellant maintained that the testimony did not comport with *Daubert* and was scientifically unreliable. At the omnibus hearing held on April 4, 2013, the State contended that Maiden's *Daubert* motion was untimely. Maiden contended that it was timely and that independent testing was required to determine the reliability of the State's testimony about the print. The circuit court made the following ruling:

| | |
|---|---|
| The Court: | The motion is denied. If you have not made a timely request for the palm print, it is unreasonable for this Court to consider days before trial an objection to a palm print that the defense has not requested. Do you have any precedent for that at all? |
| Defense Counsel: | I have a precedent for not allowing evidence that is shown to be unreliable before a jury. |
| . . . . | |
| The Court: | I don't need to have evidence the independently analyzed. You do, and, therefore, it would behoove you, if you wanted to have that evidence independently analyzed for the purpose of your motion, to have brought the motion at a time that would have allowed the Court the reasonable opportunity to consider your motion. Otherwise, you run the risk of the Court ruling that the motion is untimely, which is the Court's ruling. Next issue? |

In this appeal, Maiden does not assign error to the circuit court's ruling that his motion in limine was untimely. Rather, he contends that the circuit court abused its discretion in failing to conduct a *Daubert* hearing. Because the timeliness of Maiden's motion was the only issue the circuit court considered in its ruling, we cannot reach the merits of Maiden's argument on appeal. *E.g.*, *Phillips v. State*, 334 Ark. 578, 580, 976 S.W.2d 392, 393

22

(1998) (per curiam). Failure to obtain a ruling on an issue at the trial level precludes review on appeal. *E.g.*, *Travis v. State*, 371 Ark. 621, 633, 269 S.W.3d 341, 350 (2007).

As previously noted, Maiden was sentenced to life imprisonment. Pursuant to Arkansas Supreme Court Rule 4–3(i) (2013), the record has been reviewed for all objections, motions, and requests that were decided adversely to Maiden, and no prejudicial error was found.

Affirmed.

BAKER and HART, JJ., dissent.

**JOSEPHINE LINKER HART, Justice, dissenting.** The watershed event in this trial occurred when the prosecutor, John Hout, willfully withheld from the defense the fact that Trenell Emerson had completely changed his story and was prepared to testify that he was an eyewitness to the murder. No one disputes that Hout flagrantly violated Arkansas Rule of Criminal Procedure 17.1. Rule 17.1(a)(ii)[1] requires the State to disclose the substance of any oral statement made by a defendant or codefendant. Rule 17.1(d)[2] requires disclosure of all

---

[1]PROSECUTING ATTORNEY'S OBLIGATIONS

(a) Subject to the provisions of Rules 17.5 and 19.4, the prosecuting attorney shall disclose to defense counsel, upon timely request, the following material and information which is or may come within the possession, control, or knowledge of the prosecuting attorney:
      . . .
(ii) any written or recorded statements and the substance of any oral statements made by the defendant or a codefendant;


[2](d) Subject to the provisions of Rule 19.4, the prosecuting attorney shall, promptly upon discovering the matter, disclose to defense counsel any material or information within

exculpatory evidence. The circuit court made an express ruling that the prosecutor's conduct was wrongful.

It is also important to emphasize that no one disputes that the prosecution's conduct was prejudicial to Maiden. The circuit court likewise made an express finding on that issue. The problem with this case arises in the majority's assessment of where the prejudice lies, and what—if anything—could reasonably cure this prejudice. Under facts less egregious than the case before us, this court in *Clements v. State*, 303 Ark. 319, 796 S.W.2d 839 (1990), held that nothing short of declaring a mistrial was warranted. The majority has erred in rejecting the clear guidance of this worthy decision.

The majority believes that the prejudice could be cured by Hout's half-hearted mea culpa, additional cross-examination, and an admonishment to the jury to disregard the defense's opening statement. This belief reflects the majority's failure to grasp the full extent of the damage that the prosecution's unlawful conduct had on Maiden's defense.

In the only statement that the prosecution provided to the defense, Emerson stated that he did not witness the murder. This led Maiden's attorneys to craft a defense in which they sought to establish reasonable doubt as to the identity of Kylaus Williams's shooter. In laying out this defense in opening statement, Maiden's trial counsel repeatedly asserted that no one would testify at trial that they had witnessed the murder.

Emerson's testimony destroyed the foundation upon which the defense built its theory

---

his knowledge, possession, or control, which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce the punishment therefor.

of the case. It left Maiden's defense team scrambling to re-tool its defense midtrial. Moreover, and perhaps more important, Emerson's testimony destroyed any credibility Maiden's defense team had with the jury. It is troubling that the majority ignores the significance of this fact. In federal habeas proceedings, merely promising a defense, or an aspect of a defense, in opening statement and failing to deliver that defense, or aspect of that defense has been held to be ineffectiveness of counsel, necessitating a new trial. *United States ex rel. Hampton v. Leibach*, 347 F.3d 219 (7th Cir. 2003); *Ouber v. Guarino*, 293 F.3d 19 (1st Cir. 2002); *Anderson v. Butler*, 858 F.2d 16 (1st Cir. 1988).

However, we need not look beyond our own jurisprudence to see the proper "cure" for the prosecutorial misconduct. This court has already decided in *Clements* that a mistrial is warranted. The majority's attempt to distinguish *Clements* from the case before us falls well short. The majority cites as the distinguishing facts (1) the witness in *Clements*, Kenneth Vainer, was an "unbiased witness" and (2) the "trial jury was unaware for eight days that it had heard a story from [a witness] which was totally inconsistent with the one he told the grand jury." It is worth noting, however, that while Vainer was the only *unbiased* witness to place Clements at the crime scene, he was not the *only* witness. Clements's wife, a codefendant, testified that she was present when her husband murdered Conway Police Officer Ray Noblitt. She heard Clements threaten Noblitt and she heard the gunshots that cost the officer his life. In the case before us, Emerson was the *only* witness to testify that he saw Maiden shoot Williams. Further, while it is true that this court states that the trial jury did not see Vainer confronted with his grand jury testimony until eight days after he had

testified, it is important to note that the State provided the grand jury testimony two days after Vainer testified. In the case before us, Hout never provided Emerson's statements to the defense. It became obvious only during his testimony that Maiden's defense team had been ambushed.

*Clements* is like the case at bar, because both cases involved initial witness statements to police that had been provided to the defense. In both cases those witness statements indicated that the witness had no vital evidence. Likewise, the star witnesses in both cases, Vainer and Emerson, made undisclosed office visits to the prosecution that provided the State with the substance of their trial testimony, which differed dramatically from the initial statements. Finally, both the circuit court in *Clements* and the circuit court in the case before us attempted to cure the prejudice to the defendant by recalling the witness and giving the defendant his full right to confrontation. The doctrine of stare decisis requires that this court reverse the circuit court for failing to order a mistrial. Our adversarial system of justice simply cannot tolerate the tactics that the State employed in this case. I would reverse and remand this case for a new trial.

BAKER, J., joins.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Valerie Glover Fortner*, Ass't Att'y Gen., for appellee.