Cite as 2022 Ark. App. 360

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-22-66

| | | |
|---|---|---|
| SHAWN HARNESS | | OPINION DELIVERED SEPTEMBER 28, 2022 |
| | APPELLANT | |
| | | APPEAL FROM THE BOONE COUNTY CIRCUIT COURT [NO. 05CR-19-305] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE JOHN R. PUTMAN, |
| | APPELLEE | JUDGE |
| | | AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Shawn Harness was convicted of rape in the Boone County Circuit Court, and in this appeal, he argues that the circuit court erred by denying his motions for mistrial. We affirm.

I. *Facts*

Harness was charged with rape by criminal information filed on July 22, 2019, and he pled not guilty. On September 27, 2021, he was tried by a jury, and the victim testified that she and Harness had been in a dating relationship and moved into an apartment together, having separate bedrooms. She said that on three occasions, Harness forcibly held her down and raped her, penetrating her vagina with his penis. The State introduced a recorded conversation between the victim and Harness wherein Harness stated that he guaranteed that it would not happen again, that he thought it was not "an issue," and that

he did not "plan ahead for everything."  Detective Ted Shaeffer testified that he interviewed Harness, who confessed to the first rape, and the recorded interview was played for the jury.

The subject of Harness's appeal surrounds two objections that occurred during the victim's testimony.  Harness's counsel inquired about the victim's communication with the victim witness coordinator.  The following colloquy occurred:

Q     Did y'all talk last night?

A     Yes.

Q     What'd y'all talk about?

A     She asked if I was doing okay. She said, like, if I needed anything—we went over a couple of things so that I would be—I wouldn't have a meltdown up here.

Q     When you say you went over a couple things, what'd you go over?

A     She asked me to go through a couple of spots that she had questions about, and so I told her my part of it again.

Q     What part did she have questions about?

A     There was a couple of questions about the meme. She asked, like, why did I send it, basically. She asked if I ever, like, had a safe word or anything like that.

Q     Okay. What else did you talk about? This was last night; correct?

A     Yes.

Q     Where were you at when you were talking?

A     We talked here, and then she called me when I got home because she had a couple of those questions.

Thereafter, Harness's counsel moved for a mistrial as follows:

I guess—I think I need to ask for a mistrial because it sounds like the State's victim coordinator is going through after the trial started, after I began opening, eliciting details, and having the witness clear up some spots in her testimony. I think that's a violation of the rule where the trial had started. If the trial coor—the victim coordinator was in here, was taking notes during my opening, and now has gone through and addressed those after the trial began with the State's key—and basically the crux of the case. I think that it's—I don't want to call it witness tampering because I believe that's a crime, but I think this is an issue where I need to—I am entitled to—if they're continuing to investigate the case, I'm entitled to the discovery of the answers that she gave the trial coordinator. She is not a prosecutor. It is not work product. It is an investigation that the State is doing that I'm entitled to the answers and the notes that she's taking. I think it violates the rule, and I think the Court should declare a mistrial.

After further argument, Harness's counsel added, "I object to the witness, or the victim, sitting at counsel table as the jury came back from lunch. The victim was sitting at counsel table when the jury walked in and there's case law that says that's impermissible and reversible error."

The court ruled and Harness's counsel responded as follows:

| THE COURT: | . . . I had taken under submission the issue about communication between the victim/witness coordinator and the alleged victim after the start of the trial. I'm just going to let that go to the weight. I'm going to deny the motion for a mistrial, and I'll let you argue it in close or at the appropriate time.  And in regard to when the victim sat down at the prosecutor's table, and I think we should note that there are two tables, one behind the other here, and I can give a limiting instruction that she's not a part of the—the that the alleged victim is not a part of the prosecution team, if you want that—you might not want it for strategic reasons, but– |
|---|---|
| DEFENSE COUNSEL: | Judge, that's—I guess as long as we refrain from going any further than what's happened I think that's—that's enough. I think the encounter was short enough that it wasn't something that jumped out– |

The jury found Harness guilty and sentenced him to 120 months' imprisonment, and this timely appeal followed.

## II. *Mistrial Motion Regarding Discovery*

The decision to grant or deny a motion for mistrial is within the sound discretion of the circuit court and will not be overturned absent a showing of abuse or manifest prejudice to the appellant. *Maiden v. State*, 2014 Ark. 294, at 10, 438 S.W.3d 263, 271. A mistrial is a drastic remedy and should be declared only when there is error so prejudicial that justice cannot be served by continuing the trial, and when it cannot be cured by an instruction to the jury. *Id.* With respect to motions for mistrial based on Arkansas Rule of Criminal Procedure 17.1 (2021), we have observed that a mistrial is an extreme sanction for a prosecutorial discovery violation and is to be avoided unless the fundamental fairness of the trial itself is at stake. *Id.*

Rule 17.1(d) provides that the prosecuting attorney shall, promptly upon discovering the matter, disclose to defense counsel any material or information within his knowledge, possession, or control, which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce the punishment therefor. Arkansas Rule of Criminal Procedure 19.2 (2021) contains a continuing duty to disclose, and Rule 19.4 provides that upon a showing of cause, the court may at any time order that specified disclosures be restricted or deferred, or make such other order as is appropriate, provided that all material

4

and information to which a party is entitled must be disclosed in time to permit his counsel to make beneficial use thereof. Ark. R. Crim. P. 19.4 (2021).

Harness contends that, unlike the prosecutor, the victim witness coordinator does not have an obligation to report exculpatory statements that would benefit the defendant in either negating his guilt or reducing his punishment. Ark. R. Crim. P. 17.1(d). He argues that the prosecutor set up a filtration system for victim witness statements by having the coordinator speak to the witness and "relay only the information they see fit." He maintains that this system creates a legal barrier to the defendant's having a fair trial and receiving due process by being made aware of all statements that could potentially benefit him. He claims that the coordinator's interview on the prosecutor's behalf should be considered a discovery violation that undermines the confidence in the outcome of the trial.

We hold that the circuit court did not abuse its discretion by denying the mistrial motion. The State emphasizes that the victim was allowed to be in the courtroom during the entire trial, including during opening statements. Ark. R. Evid. 616 (2021) (the victim of a crime has a right to be present during trial of the offense). The State asserts that the victim's denial that she and Harness had a safe word was not exculpatory under Rule 17.1(d)—defense counsel already knew about the texted meme and that Harness said the couple had a safe word as counsel referred to them in his opening statement. Further, the victim had testified about both matters in direct and cross-examination before the mistrial motion was made. Accordingly, the State argues that the only information not known to defense counsel was that the coordinator asked the victim about both matters during the

5

trial while the court was adjourned. The State contends that this was not a violation of Rule 17.1(d) or Rule 19.2, and we agree. Prejudice does not exist when the defendant already has access to the information that the State did not disclose. *Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271 (2001).

## II. *Mistrial Motion Regarding Seating*

The trial judge may control the seating arrangement in the courtroom. *Webster v. State*, 284 Ark. 206, 210, 680 S.W.2d 906, 908 (1984). Unless appellant suffered some prejudice as a result of being seated with counsel, he has no ground for complaint. *Id.*; *see also Mask v. State*, 314 Ark. 25, 869 S.W.2d 1, 3 (1993) (reversing conviction wherein court had allowed victim to sit directly in front of the jury after testifying); *Moore v. State*, 299 Ark. 532, 772 S.W.2d 834 (1989) (wherein police witness sitting within the rail in a place normally reserved for parties was prejudicial).

At trial, the victim was seated at the prosecutor's counsel table as the jury entered the courtroom after a break during the victim's testimony. After Harness's objection, the court offered to give a limiting instruction. On appeal, Harness argues that allowing the victim to be at the prosecutor's counsel table was in error because it could have been seen as a gesture by the court to give extra credence to the victim's testimony.

We hold that Harness's refusal to accept the circuit court's offered admonition negated his mistrial motion. *Phavixay v. State*, 2009 Ark. 452, at 11, 352 S.W.3d 311, 318.

As indicated by the colloquy above, counsel agreed that the encounter was short and not something that "jumped out" at the jury, and he refused the admonition. Accordingly, we affirm.

Affirmed.

GRUBER and BARRETT, JJ., agree.

*Benjamin Gibson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.