2009 Ark. 430

**Diana Nichole ROBERTSON,
Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 09–159.**

Supreme Court of Arkansas.

Sept. 24, 2009.

Durrett & Coleman, by: Gerald A. Coleman, West Memphis, for appellant.

Dustin McDaniel, Att'y Gen., by: LeaAnn J. Irvin, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice.

Appellant Diana Nichole Robertson appeals from her convictions for capital murder, aggravated robbery, and arson and her sentences to life imprisonment without parole, twenty-five years imprisonment, and ten years imprisonment, respectively. She asserts three points on appeal. We find no reversible error, and we affirm.

The facts are garnered from Robertson's statements to West Memphis detectives. Robertson and her boyfriend, Maurice Leflore, had a small-time prostitution operation in West Memphis. One of their customers was the victim, O.V. Johnson, who had a valuable gun collection. On November 19, 2007, Robertson and Leflore met B.M., a fifteen-year-old runaway, at a party. The next day, Leflore dropped off Robertson and B.M. at Johnson's house, where Robertson tried to make B.M. have sex with Johnson. When B.M. refused, Robertson had sex with Johnson instead. Later that night, both Robertson and Leflore had sex with B.M. in a motel room. The following day, Leflore again dropped Robertson and B.M. off at Johnson's house, and this time B.M. had sex with Johnson.

Over the next week, Robertson and Leflore developed a plan to kill Johnson and steal his collection of guns. On November 26, 2007, Robertson went to Johnson's house and left the front door open for Leflore. Leflore followed fifteen or twenty minutes later and shot Johnson in the neck, while Johnson was sitting on the couch. After shooting Johnson, Leflore and Robertson gathered up his guns and piled them next to the front door. The two then left the house and walked down the street to Leflore's car. They next drove to meet another man, G, after which Robertson, Leflore, and G, took G's car back to Johnson's house. There, they loaded the guns into G's car, drove into the woods, dumped the guns into a ditch, and covered the guns with leaves. After this, they returned to Johnson's house for a third time. At this point, Robertson went into the house, set Johnson's body on fire, and left.

The following day, B.M. called her mother, and the police came to pick her up. That same day, Leflore was arrested for

the sexual assault of B.M. On December 3, 2007, Robertson went to the West Memphis Police Department to turn herself in on an arrest warrant for sexually assaulting B.M., after Leflore informed her that a warrant was also out for her arrest.

On December 3 and December 5, Robertson gave statements to West Memphis police detectives. She later moved to suppress the statements, and the motion was denied by the circuit judge. She was tried before a jury and convicted and sentenced as has already been stated in this opinion.

## I. Duress Instruction

For her first point on appeal, Robertson asserts that the circuit judge erred in refusing to instruct the jury on the affirmative defense of duress with respect to the charge of capital murder. We conclude that this issue is not preserved for our review. Robertson did not proffer the desired duress instruction on murder into the record, and, as a result, we do not have it before us for review. This court has repeatedly stated that it is the appellant's duty to present to this court a record sufficient to show that the circuit judge erred below. *See, e.g., Stevenson v. State*, 375 Ark. 318, 290 S.W.3d 5 (2008). To preserve an objection to an instruction for appeal, the appellant must make a proffer of the proposed instruction to the judge. *Stewart v. State*, 316 Ark. 153, 870 S.W.2d 752 (1994). That proffered instruction must then be included in the record and abstracted to enable the appellate court to consider it. *Id.* An instruction that is not contained in the record is not preserved and will not be addressed on appeal. *Id.*

It is true that Robertson offered an instruction on duress pertaining to the arson charge under AMCI 606 and claimed that sufficient evidence had been presented at trial for the jury to consider whether she had acted under duress in committing the arson. The circuit judge gave this instruction. He ruled, however, that he would not give the instruction in connection with the murder charge because he found (1) that her evidence of duress pertained to conduct that occurred after the murder had taken place, (2) that she had failed to articulate a specific threat regarding the murder, and (3) that she had acted recklessly in putting herself in the situation leading up to the murder and robbery.

Regardless of the circuit judge's reasons for not giving the duress instruction in connection with the murder charge, Robertson failed to proffer that instruction into the record for our review. We affirm on this point.

## II. Right to Counsel

Robertson next urges that the circuit judge erred by refusing to suppress her December 5, 2007 videotaped statement and any evidence obtained from it because it was given after she had invoked her right to counsel.

The facts relevant to this point are these. On December 3, 2007, Robertson went to the West Memphis Police Department to turn herself in on an arrest warrant for sexual assault involving B.M. Her boyfriend, Leflore, had been arrested on the same charge earlier in the week and had informed Robertson that she had an arrest warrant outstanding. After signing a waiver-of-rights form on December 3, Robertson was questioned by Detectives Terri Hollis, Donald Oaks, and Ken Mitchell about the sexual-assault charge. Robertson later agreed to a videotaped interview.

During the recorded portion of the interview, Detective Hollis asked Robertson about the sexual-assault charge. At one point during Detective Hollis's questioning, Robertson asked "Do I need a lawyer?" and then said that she wanted to talk to the detective "woman to woman" and continued talking. After Detective Hollis's

questioning, Robertson was questioned by Detectives Oaks and Mitchell about the sexual-assault charge and Johnson's murder. She completed the interview and was taken to the Crittenden County jail on the sexual-assault charge and told that she would have a bail hearing on December 5.

On the morning of December 5, 2007, Robertson was transported from the county jail to the West Memphis Police Station for additional questioning about Johnson's death. She was again given her *Miranda* rights and again signed a waiver-of-rights form. During the unrecorded interview that followed, Robertson admitted her involvement in Johnson's murder and offered to show the detectives where the guns stolen from Johnson's house and the murder weapon were located. She subsequently took the detectives to the site where the guns were hidden and the site where she claimed Leflore discarded the murder weapon. The police detectives recovered the guns stolen from Johnson's house but were unable to locate the murder weapon.

The detectives and Robertson returned to the police station, and Robertson agreed to give another videotaped statement. At the outset of the interview, Detective Mitchell began to read Robertson her *Miranda* rights, but she cut him off and recited the *Miranda* rights from memory, commenting that this was the fifth time they had gone over them. She then detailed her involvement in Johnson's murder. After the interview, Robertson was arrested for capital murder.

Prior to trial, Robertson moved to suppress her December 5, 2007 statement and the evidence recovered on the same date. At the suppression hearing, the circuit judge heard the testimony of Robertson and the four detectives—Hollis, Galtelli, Oaks, and Mitchell. Robertson testified that she had asked several times for an attorney off the record and once on the record on December 3. Robertson also stated that she asked whether she had missed her court date during her December 5 interview because she thought she would be getting an attorney at that time. All four detectives testified that Robertson never asked for an attorney off the record and that her only reference to an attorney came on December 3, when she asked if she needed a lawyer. At the conclusion of the hearing, the circuit judge found that "any request or mention of a lawyer was unclear and equivocal at best."

Robertson now claims that the circuit judge should have suppressed her December 5 statement because: (1) she invoked her right to the assistance of counsel during the December 3 interrogation by asking if she needed an attorney; (2) she believed that "she was going to an appointment to have an attorney appointed to her" when she was interrogated on December 5; and (3) she testified at the suppression hearing that she made a number of clear and unequivocal requests for an attorney on December 5 that were not recorded by the detectives.

The question before this court is whether Robertson sufficiently invoked her right to counsel at the December 3 interrogation. This court has observed that when invoking the *Miranda* right to counsel, the accused must be unambiguous and unequivocal. *Holsombach v. State,* 368 Ark. 415, 421, 246 S.W.3d 871, 876 (2007) (citing *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)). An equivocal request for counsel does not obligate police officers to cease questioning and seek clarification, but interrogation may continue until the suspect unambiguously requests counsel. *Wallace v. State,* 2009 Ark. 90, 302 S.W.3d 580. As the United States Supreme Court has said, an accused "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the cir-

cumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). Furthermore, "after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Id.* at 461, 114 S.Ct. 2350.

The precise issue here is Robertson's statement made to Detective Hollis during the December 3 interrogation, where Robertson said: "Do I need a lawyer?" This court on numerous occasions has rejected the argument that questions of this type are unequivocal requests sufficient to require an interrogating officer to cease questioning. *See, e.g., Wallace v. State*, 2009 Ark. 90, 302 S.W.3d 580 (when asked if he understood his right to have an attorney present, appellant responded: "Yes sir, do I need one?"); *Flanagan v. State*, 368 Ark. 143, 243 S.W.3d 866 (2006) ("Do I need to call an attorney?"); *Higgins v. State*, 317 Ark. 555, 879 S.W.2d 424 (1994) ("Do you think I need an attorney?"). In these cases, this court rejected the argument that such questions constituted unequivocal requests for the assistance of counsel, concluding that such references were "surely ambiguous and hardly amounted to the sort of direct request required to invoke [the] Fifth Amendment right to counsel." *Wallace*, 2009 Ark. 90, at 20, 302 S.W.3d at 591; *Flanagan*, 368 Ark. at 160, 243 S.W.3d at 878; *Higgins*, 317 Ark. at 563, 879 S.W.2d at 428.

Here, Robertson's question, "Do I need a lawyer?" is analogous to the questions raised in *Wallace, Flanagan,* and *Higgins,* and those cases control this issue. We hold that Robertson's question did not amount to the type of unequivocal request required to force an interrogating officer to cease questioning. Similarly, Robertson's inquiries in her December 5 statement concerning her bail hearing on the sexual-assault charge that was scheduled for later that day, which she contends showed she was under the impression that a lawyer would be appointed for her shortly, were insufficient to force a cessation of the interrogation. As noted previously, an accused "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Wallace*, 2009 Ark. 90, at 19, 302 S.W.3d at 591 (quoting *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994)). Robertson's questions concerning whether she would make her bail hearing did not articulate a desire on her part to have counsel present. A reasonable police officer under these circumstances would not have understood them to be requests for an attorney.

As a final point, Robertson asserts that she unequivocally asked for an attorney several times off the record, both on December 3 and December 5, and testified to such at her suppression hearing. However, all four detectives involved in interrogating Robertson testified at the suppression hearing that she never asked for a lawyer on December 3 or December 5 and that her only mention of an attorney came on December 3 when she asked if she needed a lawyer. The circuit judge credited the testimony of the four officers over that of Robertson's, and this court defers to the superior position of the circuit judge to pass on the credibility of witnesses. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003). Robertson makes much of the fact that large portions of her interrogations were not recorded. This court, nevertheless, has noted that no Arkansas law requires the police to record an interrogation in its totality. *See, e.g., Clark v. State*, 374 Ark. 292, 287 S.W.3d 567 (2008).

We affirm on this point as well.

### III. Hearsay

For her final issue on appeal, Robertson maintains that the circuit judge allowed the State to introduce inadmissible hearsay evidence. At issue is the testimony of B.M., who testified that she overheard a conversation between Robertson and Leflore in which the two discussed a plan to rob Johnson. Specifically, Robertson objects to B.M.'s testifying as follows:

> I first met Leflore on the 19th of November 2007. At least two days after I met [Robertson] and [Leflore], I had a conversation in the vehicle with them. [Roberston] said that [Johnson] was getting too cocky, and that she knew he had more money and more guns in the house and to find a way to rob him. . . . In response, [Leflore] said he was going to find a way to kill him. He was going to go in after [Robertson] and put Seroquel in his drink, and find a way to shoot him.

Initially, the circuit judge sustained Robertson's objection to B.M.'s testimony over the prosecutor's argument that the testimony was not offered for the truth of the matter asserted but rather as evidence of Robertson's state of mind or intent. Yet, after the prosecutor proffered B.M.'s testimony, the circuit judge changed his mind and ruled that the testimony was admissible under Arkansas Rule of Evidence 803(3), the state-of-mind exception. Robertson now contends that B.M.'s testimony should have been excluded because the statement "relates to a plan or action, which was rejected by [Robertson]." She argues further that the circuit judge erred "in allowing a devastating statement by Leflore where he was going to sho[o]t the victim, which inferred that appellant was part of a plan to shoot the victim, into evidence based upon a plan that was not carried out."

The State first urges that Robertson failed to preserve this issue for appeal because she failed to make a responsive argument to the Rule 803(3) ruling, after the circuit judge readdressed the issue at trial. The State also claims that the basis for Robertson's objection below differed from her arguments on appeal. For its last point, the State urges that this court should decline to reach this issue because Robertson has failed to cite authority in her brief on appeal to support her argument or provide convincing argument. The State is correct about Robertson's change of argument on appeal.

Prior to trial, Robertson moved to exclude any witness from testifying about statements made by Leflore and argued that Leflore's statements were hearsay under Arkansas Rule of Evidence 802. Specifically, she contended that the State had failed to prove the existence of a conspiracy so as to make the statements admissible as a "statement by a co-conspirator of a party during the course and in furtherance of the conspiracy" under Arkansas Rule of Evidence 801(d)(2)(v). During B.M.'s testimony on direct examination, the prosecutor asked her: "Now at that point, what did [Leflore] tell you and [Robertson]?" Robertson's counsel immediately objected without articulating a reason, though presumably it was a general hearsay objection. Counsel said: "Well, objection to that, your Honor." The circuit judge responded: "I'll sustain . . . the part about [Leflore]."

After continuing with the direct examination of B.M. for several minutes, the prosecutor approached the bench and, referring to the circuit judge's ruling on Robertson's prior objection, argued that B.M.'s testimony about Leflore's statements was admissible as a statement against interest, or as a present sense impression, or because it was not being

introduced to prove the truth of the matter asserted. After discussion with counsel, the circuit judge sustained the objection, finding that a statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both himself and the accused, was not within the argued Rule 804(b)(3) hearsay exception dealing with a statement against interest.

As already noted, at the conclusion of the State's evidence, the prosecutor proffered the testimony of B.M. that the circuit judge had excluded. After B.M.'s testimony was proffered, the following colloquy occurred:

THE COURT: You still object to this information?

DEFENSE COUNSEL: Yes.

THE COURT: All right. The court's researched this issue last night and again today and based on my reading and rereading Rule 803(3), then existing mental, emotional, physical condition, including state of mind, such as intent and motive. Finding that motive and intent are always relevant and probative in a criminal case and based on the holding of *Haire v. State*, 340 Ark. 11, 8 S.W.3d 468 (2000), . . . court finds this evidence is admissible and overrules the objection of [Robertson]

PROSECUTOR: Thank you.

THE COURT: So, I'll note your objection and the jury can hear the evidence.

DEFENSE COUNSEL: So, your Honor, you're specifically allowing that under—

THE COURT: 803(3).

DEFENSE COUNSEL: Right.

THE COURT: State of mind.

DEFENSE COUNSEL: State of mind.

THE COURT: Yes.

DEFENSE COUNSEL: All right.

Defense counsel made no argument against allowing the testimony under Rule 803(3). Indeed, at no point did Robertson address her opposition to the Rule 803(3) exception before the circuit judge, as she now does in this appeal.

 Because Robertson did not contest the circuit judge's Rule 803(3) ruling in any form or fashion after the judge changed his mind and concluded that B.M.'s testimony fit within that exception, we will not consider it at this juncture. It is boilerplate law that we will not consider arguments made for the first time on appeal. *See, e.g., Ramaker v. State*, 345 Ark. 225, 46 S.W.3d 519 (2001).

The record in this case has been reviewed for reversible error pursuant to Arkansas Supreme Court Rule 4–3(i), and none has been found.

Affirmed.