RAYMOND R. ABRAMSON, Judge
A Garland County jury convicted Andrew Lee Jackson of two counts of rape and sentenced him to 40 years' imprisonment in the Arkansas Department of Correction (ADC) for each conviction, to be served consecutively. On appeal, Jackson does not challenge the sufficiency of the evidence to support his convictions. Rather, he argues that the circuit court erred by denying his request for a nonmodel jury instruction and by improperly limiting his cross-examination of Sergeant Michael Wright. We disagree and affirm.
During Jackson's trial, the jury heard evidence regarding the sexual relationships Jackson had with two teenaged girls, I.S. and her sister, M.S. I.S. was thirteen years old and M.S. was sixteen years old when Jackson, who was 28 years old at the time and the girls' youth pastor, began having sexual relations with them. Jackson's first point on appeal is that the circuit court erred when it denied his request for a jury instruction limiting the testimony of the forensic examiner, Tracy Childress. This argument is not preserved for our review. At trial, during a bench conference, Jackson's counsel admitted his failure to object stating, "Your Honor, I don't know how we fix it at this point, but I screwed up right then by not objecting to her talking about the credibility of the girls' statements." In his appellate brief, he writes, "[A]t that time it was too late for a contemporaneous objection to the improper testimony and counsel continued on with the case," and argues that because Childress made a direct statement that she believed the girls to be credible and that this testimony should not have been offered, he attempted to correct the problem by presenting the jury with a nonmodel jury instruction to direct the jurors to disregard Childress's testimony regarding the girls' credibility.
It is a well-settled general rule that we will not consider issues raised for the first time on appeal; a contemporaneous objection is required to preserve an issue for appeal. Davis v. State , 2011 Ark. App. 561. Our supreme court has recognized four narrow exceptions to the contemporaneous-objection rule, known as the Wicks exceptions. Wicks v. State , 270 Ark. 781, 606 S.W.2d 366 (1980) ; see also Springs v. State , 368 Ark. 256, 244 S.W.3d 683 (2006) ; Anderson v. State , 353 Ark. 384, 108 S.W.3d 592 (2003). These exceptions occur when (1) a circuit court, in a death-penalty case, fails to bring to the jury's attention a matter essential to its consideration of the death penalty itself; (2) a circuit court errs at a time when defense counsel has no knowledge of the error and thus no opportunity to object; (3) a circuit court should intervene on its own motion to correct a serious error; and (4) the admission or exclusion of evidence affects a defendant's substantial rights. Id. In the instant case, none of the Wicks exceptions apply; therefore, Jackson's first argument is not preserved for appeal.
*756 Moreover, we need not reach this issue because Jackson's counsel also failed to preserve this argument because he did not proffer his proposed nonmodel jury instruction into the record. In order to preserve an objection to the circuit court's failure to give an instruction, Jackson's attorney must have made a proffer of the proposed instruction to the court. E.g. , Stewart v. State , 316 Ark. 153, 157, 870 S.W.2d 752, 755 (1994). That proffered instruction must be included in both the record and abstract to enable the appellate court to consider it. Id. at 158, 870 S.W.2d at 755. An instruction that is not contained in the record is not preserved and will not be addressed. Id. Here, the defense counsel did not proffer a nonmodel jury instruction, and the record does not contain a proposed nonmodel instruction. Accordingly, we do not address it.
In Jackson's second and final point on appeal, he contends that the circuit court abused its discretion when it improperly limited the cross-examination of the State's witness, Sergeant Michael Wright. Jackson's attorney attempted to impeach Sergeant Wright by cross-examining him regarding other child sex-abuse cases in which he had arrested other suspects. Specifically, Jackson's attorney sought to show that Sergeant Wright was biased against Jackson and others whom Sergeant Wright had arrested for child sex-abuse offenses in separate, unrelated cases. The State objected to the relevance of Sergeant Wright's arresting other people. The circuit court sustained the State's objection, and Jackson's counsel was prohibited from asking Sergeant Wright about unrelated cases. On appeal, Jackson avers that the circuit court abused its discretion. We disagree.
The decision to admit or exclude evidence is within the sound discretion of the circuit court, and appellate courts will not reverse that decision absent a manifest abuse of discretion. E.g. , Maiden v. State , 2014 Ark. 294, at 4, 438 S.W.3d 263, 268 ; see also Rodgers v. State , 360 Ark. 24, 27, 199 S.W.3d 625, 627 (2004) (appellate courts review matters concerning the scope of cross-examination under an abuse-of-discretion standard). The abuse-of-discretion standard does not simply require error in the circuit court's decision; rather, it requires that the lower court act improvidently, thoughtlessly, or without due consideration. E.g. , Maiden , 2014 Ark. 294, at 4, 438 S.W.3d at 268. Furthermore, we will not reverse an evidentiary ruling absent a showing of prejudice. Id.
Rule 611 of the Arkansas Rules of Evidence provides:
(b) Scope of Cross-Examination. Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.
Ark. R. Evid. 611(b) (2017).
The circuit court has wide latitude to impose reasonable limits on cross-examination based on concerns about confusion of issues or interrogation that is only marginally relevant. E.g. , Biggers v. State , 317 Ark. 414, 424, 878 S.W.2d 717, 722 (1994).
At trial, Sergeant Wright testified that on November 6, 2014, Kathy Finnegan, an investigator with the Arkansas State Police, Crimes Against Children Division (CACD), called him regarding allegations that had been made to the child-abuse hotline against Jackson. Sergeant Wright explained that when sexual-abuse allegations are reported, the criminal investigators (like him) work very closely with the CACD in an attempt to make the overall *757 process easier for the victims. The criminal investigator focuses on the criminal matter, and the CACD investigates potential child maltreatment. The two units work together to maximize convenience so that the victims are not forced to repeatedly answer the same questions.
When questioned by the State on why child sex-abuse cases have merged into the multidisciplinary investigation process, Sergeant Wright responded:
[T]hese type of cases are real difficult from different standpoints. It's difficult on the investigator, especially if that investigator has children of his own. It can be very trying. And so as a result of that you have a lot of investigators that simply just do not like to work these type cases. But what we have found is that by taking a multidisciplinary approach we provide better services for these children and we also provide a better opportunity to present a good case and to bring those responsible to justice.
During cross-examination, the following exchange between Jackson's counsel and Sergeant Wright transpired:
MR. ETHRIDGE : Well, did you go look at this sectional where the allegation that Mr. Jackson had sex with I.S. on the same couch where his wife was sleeping?
SERGEANT WRIGHT : No, I did not. MR. ETHRIDGE : Is that because these cases really piss you off and you'd made up your mind?
SERGEANT WRIGHT : No, sir.
MR. ETHRIDGE : You've gotten warrants for other people to be arrested, haven't you?
SERGEANT WRIGHT : Yes.
MR. ETHRIDGE : Sometimes these cases go to trial?
SERGEANT WRIGHT : Yes.
MS. LAWRENCE : Objection, may we approach?
THE COURT : Come on up.
(Bench conference as follows:)
MS. LAWRENCE : I'm gonna object to relevance of arresting other people and other people going to trial. I don't see how that's relevant in this case.
MR. ETHRIDGE : Your Honor, he's testified that he's had twenty to twenty-five cases that have gone to trial. I think it's certainly reasonable for the jury to find out what may have happened in some of those cases.
THE COURT : In those cases?
MR. ETHRIDGE : Yes.
THE COURT : No. Sustained.
MR. ETHRIDGE : I don't understand the ruling.
THE COURT : Okay, well are you asking him about cases that are unrelated to this case? MR. ETHRIDGE : I'm not asking him about specific incidents. I'm asking him-eventually I'm going to ask him if people he's gotten warrants for have been found not guilty.
MS. LAWRENCE : That's not relevant.
THE COURT : You're gonna have to show me how that's relevant to this case.
MR. ETHRIDGE : Your Honor, I think it shows his bias as an investigator that he goes and gets warrants and not every case is-
THE COURT : Do you have a case to show me that he's done that?
MR. ETHRIDGE : Your Honor, I can think of two cases where he was the lead investigator.
THE COURT : Well I mean if you had those cases, that was something that you should have brought up to the Court before you asked the question.
*758 This is not about that. This is a different case.
MR. ETHRIDGE : I understand that. I'm just asking about his past history, that he's had cases-he's had arrests and he's had trials and some of those trials have come out not guilty.
THE COURT : We're not going into past cases. That's sustained.
On appeal, Jackson maintains that he should have been allowed to call into question Sergeant Wright's bias against him under Rule 611 of the Arkansas Rules of Evidence. He asserts that when Sergeant Wright is involved in child sex-abuse cases, they "piss him off." Jackson argues that shows Wright's own personal bias against him and that this bias causes Wright to do "less than the appropriate level of police investigation because he allows his emotions to lead him instead of the facts of the case."
To support his argument, Jackson relies on Henderson v. State , 279 Ark. 435, 437, 652 S.W.2d 16, 18 (1983), for the general proposition that in Arkansas, a "full cross-examination" should be allowed in order to show bias. However, Henderson is distinguishable from the case at bar. The disputed testimony in that case was from Henderson's admitted accomplice who was questioned about the type of deal he was getting from the State in exchange for his testimony against Henderson. See Henderson , 279 Ark. at 438, 652 S.W.2d at 18. Our supreme court held that the testimony should have been allowed because it was a direct evidentiary link between Henderson and the murders. See id. There was no such direct link here. The circuit court is allowed wide latitude to impose reasonable limits on cross-examination based on concerns about harassment, prejudice, waste of time, confusion of issues, or interrogation that is repetitive or only marginally relevant. E.g. , Green v. State , 2018 Ark. App. 38, at 2, 2018 WL 523256.
Defense counsel's attempt to cross-examine Sergeant Wright about prior child sex-abuse cases that he investigated in which arrest warrants were issued for people who were ultimately found not guilty of the charges risked jury confusion as to Jackson's charges. It would only call for speculation as to the reasons that might have yielded any acquittals in those prior cases that were completely unrelated to whether Jackson had raped I.S. and M.S. Furthermore, the fact that not every single person Sergeant Wright arrested was found guilty of a crime is not even marginally relevant to the question of whether Jackson raped I.S. and M.S.
Additionally, Jackson's attempt to cast Sergeant Wright in a negative light because cases involving sexual abuse of children "piss him off" does not equate to a bias against Jackson. There is no evidence in the record before us that Sergeant Wright ever acted improperly in his role as investigator in this case or any other case in which he was involved. We hold that the circuit court did not abuse its discretion in denying cross-examination of Sergeant Wright regarding arrest warrants in other cases and individuals who were wholly unrelated to the trial at hand. Accordingly, we affirm.
Affirmed.
Virden and Whiteaker, JJ., agree.