LARRY D. VAUGHT, Judge
William Gray was convicted by a Pope County Circuit Court jury of murder in the first degree. He was sentenced to forty years' imprisonment plus a fifteen-year-imprisonment enhancement because the jury also found that he employed a firearm as a means of committing the murder. On appeal, Gray argues that the Pope County Circuit Court abused its discretion in refusing to include language in his justification jury instruction that he was not required to retreat from the curtilage of his dwelling. Because this issue is not preserved for appeal, we affirm.
On May 25, 2016, law-enforcement officers were called to Gray's home located at 213 James Circle, in Russellville, Arkansas. Upon arriving at the scene, officers found Rachel Michelle Chisum dead in her locked and running vehicle located across the street from Gray's home. Officers also found a knife and a screwdriver in Chisum's vehicle. Officers found Gray standing outside his home. When asked what happened, Gray stated that Chisum "was busting up my car and I shot her." An officer asked Gray where the firearm was, and Gray pointed to a gun lying on his front patio. Officers retrieved the firearm and arrested Gray. He was charged with first-degree murder.
At trial, testimony revealed that Gray and Chisum had been romantically involved but had broken up. Evidence was presented that prior to May 25, 2016, Gray had called the police to his home on two occasions regarding Chisum's harassing *290 behavior. The first occasion was on December 8, 2015, when Gray called the police reporting that Chisum had been knocking on the window of his home, she was parked behind his car blocking him in, and she would not leave. Officers were called to Gray's home a second time on May 24, 2016, the day before the shooting. On this occasion, Chisum had been driving by Gray's home threatening him, and she used an object to beat Gray's vehicle.
On May 25, 2016, Gray testified that he was asleep on the couch when he awoke to Chisum coming toward him with a knife and a screwdriver attempting to stab him in the neck. He said that he grabbed her wrists and kicked her off him. According to Gray, Chisum ran out the front door and into Gray's vehicle to retrieve his gun. Gray testified that he grabbed Chisum by the waist, pulled her out of the car, grabbed the gun, and placed it in his waistband. Gray stated that Chisum ran to her car, "thr[ew] it in reverse and whip[ped] it and clip[ped] me" with the front end, knocking him to the ground and causing the gun to fall out of his waistband. He said that Chisum revved her car in neutral, and he thought she was going to run over him, so he "got up shooting." He said that she "whipped" her car around and then it rolled away, eventually stopping when it struck a wire fence across the street.
Corporal Joe Paterak of the Russellville Police Department testified that he found one bullet hole above the passenger-side door handle and two bullet holes in the driver's side window of Chisum's vehicle. Lieutenant Glenn Daniel of the Russellville Police Department stated that he discovered two bullet holes in the windshield of Chisum's vehicle. Russellville Police Department Detective Quinn Jones testified, and photographs confirmed, that four spent shell casings and one live round were found in the parking lot, sidewalk, and grass near Gray's neighbor's home at 211 James Circle. An associate medical examiner testified that Chisum died from a bullet that entered and exited her left arm, entered her chest cavity, and traveled through her lungs and heart.
At the conclusion of the evidence, the jury found Gray guilty of first-degree murder. Gray's sole point on appeal is that the circuit court abused its discretion in refusing to instruct the jury that he had no duty to retreat from the curtilage of his dwelling. We cannot reach the merits of his argument because it is not preserved for appeal.
At trial, after both parties rested, the circuit court stated:
Before we get our jury in here, I want to announce that I have read this Moody [v. State , 2014 Ark. App. 538, 444 S.W.3d 389] case and I do agree with the State. I'm going to submit the instruction on justification with the language that just, well, it eliminates the curtilage. Now we still define curtilage, what it is in the definition parts of it, but so I'm clear ... basically it will read, "A person is not justified in using deadly force if he knows that the use of deadly force can be avoided with complete safety by retreating."
I mean, you decide these, based on that case, you decide it on the facts of each case. This incident, homicide took place out in the parking lot of an apartment duplex-type of facility. It was a common area and by analogy, fourth amendment jurisprudence, there's no expectation of privacy. It's common to everyone - - the parking lot area, the grassy area even - - so that will be the Court's ruling.
In response, Gray's counsel stated:
If the Court would - - for the record - - note our objection, respectful *291 objection to the ruling. We believe that it should be admitted because the initial contact took place not only on his curtilage but inside the house. And even on the facts most generously state[d], this shooting took place less than 20 feet or so from his front door.
The circuit court noted Gray's objection and read the jury AMI Crim. 2d 704,[1] omitting the curtilage language he requested.
Both parties agree that the above exchange between the circuit court and Gray's counsel suggests that an unrecorded bench conference must have taken place during which Gray requested that the justification jury instruction include language that he was not required to retreat from the curtilage of his dwelling. This conference is not abstracted and is not in the record. Nevertheless, Gray contends that the issue is preserved for appeal because his counsel lodged the above objection when the circuit court ruled that it would omit the curtilage language. In contrast, the State contends that the issue is not preserved because Gray failed to proffer the instruction that included the curtilage language that he wanted the court to read to the jury. We agree with the State.
It is well settled that to preserve an objection to the circuit court's failure to give a jury instruction, the appellant must have made a proffer of the proposed instruction to the court. Jackson v. State , 2018 Ark. App. 222, at 3, 547 S.W.3d 753, 756 (citing Stewart v. State , 316 Ark. 153, 157, 870 S.W.2d 752, 755 (1994) ). That proffered instruction must be included in both the record and the abstract to enable the appellate court to consider it. Id. , 547 S.W.3d at 756. An instruction that is not contained in the record is not preserved and will not be addressed. Id. , 547 S.W.3d at 756 ; see also Robertson v. State , 2009 Ark. 430, at 3, 347 S.W.3d 460, 462 (holding that to preserve an objection to an instruction for appeal, the appellant must proffer the proposed instruction to the circuit court, include it in the record on appeal, and abstract it to enable the appellate court to consider it; an instruction that is not contained in the record is not preserved and will not be addressed on appeal).
In the instant case, Gray's counsel did not proffer the jury instruction he proposed to the circuit court, and the record does not contain the proposed instruction; therefore, we cannot address his argument on appeal. Accordingly, we affirm.
Affirmed.
Virden and Gladwin, JJ., agree.

AMI Crim. 2d 704 is based on Arkansas Code Annotated section 5-2-607 (Supp. 2017).