Cite as 2021 Ark. App. 406

# ARKANSAS COURT OF APPEALS
## DIVISION II
**No.** CR-19-974

| | |
|---|---|
| WILLIAM EDWARD GRAY<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** October 27, 2021<br><br>APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. 58CR-16-429]<br><br>HONORABLE WILLIAM M. PEARSON, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

A jury convicted appellant William Edward Gray of first-degree murder in the shooting death of his ex-girlfriend, Rachel Michelle Chisum. He was sentenced to forty years' imprisonment with a fifteen-year firearm enhancement. Gray's conviction was affirmed by this court on direct appeal. *Gray v. State*, 2018 Ark. App. 544, 564 S.W.3d 289 (*Gray I*).[1] Gray filed a petition for postconviction relief pursuant to Ark. R. Crim. P. 37.1, which was denied without an evidentiary hearing. On appeal from the denial of his petition, we remanded to settle the record with factual findings regarding the verification of Gray's petition. *Gray v. State*, 2020 Ark. App. 553 (*Gray II*). The circuit court found that Gray's

---

[1]We granted Gray's motion to take judicial notice of the fact that Gray filed a petition for rehearing in this court and a petition for review by the Arkansas Supreme Court, both of which were denied.

petition was properly and timely verified; therefore, we may now address the merits of Gray's appeal. We affirm the circuit court's decision.

## I. *Factual Background*

On May 25, 2016, law enforcement officers from the Russellville Police Department were dispatched to Gray's residence, a duplex located at 213 James Circle, in response to a disturbance involving a knife. Upon arriving at the scene, officers found a woman, later identified as Chisum, dead inside her car, which was resting against a fence across the street from Gray's duplex. Gray told officers that he had shot Chisum because she "was busting up" his car. Gray was arrested and charged with first-degree murder.

The following is Gray's account of the events on the morning of the fatal shooting. Gray claimed that he had been asleep on his couch when he awoke to find his ex-girlfriend, Chisum, inside his apartment attacking him with a knife and what he thought was a tire iron. He said that he grabbed Chisum's forearms and kicked her in the midriff to get her off of him. The couple's physical altercation moved outside the home when, according to Gray, Chisum threatened to "blow his head off" and ran to retrieve a gun from inside his car. Gray said that he grabbed Chisum by the waist and "slung" her out of his car and that he got the gun and placed it in his waistband.

According to Gray, Chisum then "quickstep[ped]" to her car, "thr[ew] the car in reverse and whip[ped] it back towards [him] and clip[ped] [him] with the front end of the car." This knocked him to the ground and caused the gun to fall out of his waistband. Gray said that Chisum revved her car in neutral and that, because he thought that she was going to run over him, he "got up shooting." Gray testified, "I almost died in my apartment[,]

2

and I almost died out there in that parking lot." None of Gray's neighbors witnessed the actual shooting. In fact, no one heard anything out of the ordinary until the gunshots.

There was evidence that Chisum had been at Gray's duplex multiple times on the night before the fatal shooting, harassing him by beating on his door and bashing his car with an object. One neighbor saw Chisum doing something to the front tire on Gray's car. Police officers found a small paring knife in the cup holder of Chisum's car and a screwdriver on the passenger-side floorboard. Gray could not explain how Chisum, who he said had one weapon in each hand while attacking him, managed to hold on to both items during their extended confrontation.

Gray did not receive any bleeding wounds during the attack on the couch, nor did he sustain any injuries from being clipped by Chisum's car. The medical examiner testified that Chisum, described as smaller than average, suffered numerous injuries associated with a gunshot wound from a single projectile but that she did not have any other injuries, such as blunt-force trauma or bruises associated with a violent struggle. Moreover, photographs taken inside Gray's home did not indicate any type of conflict had occurred there, given that his tennis shoes and other items had not been disturbed.

Gray had testified that he kept the gun with him for protection after Chisum's numerous threats on his life. A neighbor had seen Gray's gun stashed in the console on his couch. According to Gray, on the morning of the shooting, he had forgotten the gun inside his car when he went out for cigarettes. He could not explain how Chisum knew that the gun was in his car. Moreover, Gray did not tell the 911 operator that Chisum had struck him with her car, and the responding officer who had asked Gray what happened, stated

3

that Gray did not mention that Chisum had tried to run over him with her car. Gray's neighbor on the other side of the duplex testified that she heard gunshots, went to the window, and saw Gray standing in her yard beside a car that was slowly moving away.

After the defense had rested its case, the circuit court refused the defense's request to include with the justification instruction language that there is no duty to retreat from the curtilage of one's dwelling. Referencing the model jury instruction, AMI Crim. 2d 705, the circuit court made the following ruling:

> Before we get the jury in here, I want to announce that I have read the *Moody* case and I do agree with the State. I'm going to submit the instruction on justification with the language that eliminates the curtilage. Now we still define curtilage, what it is in the definition parts of it, but so I'm clear, basically it will read, "A person is not justified in using deadly force if he knows that the use of deadly force can be avoided with complete safety by retreating."
>
> I mean, you decide these based on the facts in each case. This incident, homicide, took place in a parking lot of an apartment duplex-type facility. It was a common area and by analogy, fourth amendment jurisprudence, there's no expectation of privacy. It's common to everyone, so that will be the Court's ruling.

Defense counsel objected to the instruction, saying that "[w]e believe it should be admitted because the initial contact took place not only on his curtilage, but inside the house. And even on the facts most generously stated, this shooting took place less than twenty feet from [Gray's] front door." The circuit court overruled the objection. The jury was instructed on first- and second-degree murder, as well as extreme-emotional-disturbance manslaughter, in addition to the defense of justification without the optional curtilage language. The jury convicted Gray of first-degree murder and found that he had committed the offense using a firearm, subjecting him to an enhanced sentence.

Gray argued on direct appeal that the circuit court had erred in not instructing the jury that there is no duty to retreat from the curtilage of one's dwelling. We affirmed his conviction without addressing the merits of his argument because trial counsel had failed to proffer the entire instruction, including the curtilage language, to the circuit court. *Gray I*, *supra*. We cited *Robertson v. State*, 2009 Ark. 430, 347 S.W.3d 460, and *Jackson v. State*, 2018 Ark. App. 222, 547 S.W.3d 753, for the proposition that, to preserve an objection to an instruction, the appellant must make a proffer of the proposed instruction, include it in the record, and abstract it to enable the appellate court to consider it.

In his petition for postconviction relief, Gray argued that his trial counsel was ineffective for (1) failing to properly preserve the issue of the circuit court's refusal to instruct the jury that, when considering the defense of justification, he had no duty to retreat from the curtilage of his home; (2) failing to request that jurors be instructed on reckless manslaughter, or "imperfect self-defense"; (3) failing to raise a due-process objection to the circuit court's deletion of the curtilage language because it reduced the State's burden of proof; and (4) failing to preserve error based on deletion of the curtilage language because it prejudiced him in the jury's firearm-enhancement decision. With respect to his fifth point, Gray argued that he was denied due process of law and that his implied right of appeal was violated when the appellate courts used a rule of procedural default not usually and consistently applied to deny review on the merits of an unpreserved claim on direct appeal.

In denying Gray's petition, the circuit court addressed each of Gray's arguments. The circuit court found that the evidence of Gray's guilt was overwhelming. The circuit court pointed out that Gray had not been prohibited from presenting his justification defense to

5

the jury; however, the circuit court found that the evidence did not support instructing the jury that Gray had no duty to retreat from the curtilage of his dwelling "by either the State's or the Petitioner's account of the events." The circuit court noted that the evidence demonstrated that Gray had killed Chisum from the location of the parking lot near the lawn directly in front of his neighbor's residence. The circuit court specifically rejected the notion that Gray had been at his assigned parking spot when Chisum was killed because there was no such evidence—just argument by trial counsel.

## II. *Ineffective Assistance of Counsel*

### A. Standard of Review

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the effective assistance of counsel. *Thompson v. State*, 2019 Ark. 312, 586 S.W.3d 615. The benchmark for judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The standard governing ineffective-assistance-of-counsel claims is the familiar two-prong test established in *Strickland*. To prevail under *Strickland*, a petitioner must show both that his counsel's performance was constitutionally deficient and that he was prejudiced as a result. *Williams v. State*, 2019 Ark. 289, 586 S.W.3d 148.

A petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Maiden v. State*, 2019 Ark. 198, 175 S.W.3d 120. A petitioner bears the heavy burden of demonstrating that his counsel's

6

performance fell below an objective standard of reasonableness. *Id*. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. The petitioner must identify specific acts and omissions that, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Chunestudy v. State*, 2014 Ark. 345, 438 S.W.3d 923.

With respect to prejudice, the petitioner must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Douglas v. State*, 2018 Ark. 89, 540 S.W.3d 685. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id*. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding; rather, the likelihood of a different outcome must be substantial, not just conceivable. *Marshall v. State*, 2020 Ark. 66, 594 S.W.3d 78. Unless the petitioner satisfies both prongs, it cannot be said that his conviction resulted from a breakdown in the adversarial process that rendered the result unreliable. *Gordon v. State*, 2018 Ark. 73, 539 S.W.3d 586. Accordingly, there is no reason for a court to address both components of the inquiry if the defendant makes an insufficient showing on one. *Marshall*, *supra*.

B. Justification Instruction

Gray's first four arguments pertain to trial counsel's alleged failures with respect to jury instructions—failing to proffer an instruction and preserve error, failing to request an instruction, and failing to object to an instruction. We will not reverse the denial of postconviction relief unless the circuit court's findings were clearly erroneous. *Liggins v. State*, 2016 Ark. 432, 505 S.W.3d 191. Clear error exists where, after reviewing the totality

7

of the evidence, we are left with the definite and firm conviction that a mistake has been made. *Id.*

Gray's arguments primarily pertain to the justification instruction and the circuit court's refusal to instruct the jury that he had no duty to retreat from the curtilage of his dwelling. The statute on which the model instruction is based, Ark. Code Ann. § 5-2-607 (Supp. 2015), provides that a person is justified in using deadly physical force upon another person if the person reasonably believes that the other person is committing or about to commit a felony involving physical force or violence, or the other person is using or about to use unlawful deadly physical force. Ark. Code Ann. § 5-2-607(a)(1) & (2). A person may not use deadly physical force in self-defense if the person knows that he or she can avoid the necessity of using deadly physical force with complete safety by retreating. Ark. Code Ann. § 5-2-607(b)(1)(A). The portion of the instruction that the circuit court omitted provides that a person is not required to retreat if the person is in the person's dwelling or on the curtilage surrounding the person's dwelling and was not the original aggressor. Ark. Code Ann. § 5-2-607(b)(1)(B)(ii). Despite omitting the curtilage language, the circuit court nevertheless defined "curtilage" as the land adjoining the dwelling that is convenient for residential purposes and is habitually used for residential purposes, but not necessarily enclosed, and includes an outbuilding that is directly and intimately connected with the dwelling and in close proximity to the dwelling. Ark. Code Ann. § 5-2-607(c)(1). Thus, the pivotal question for the circuit court was whether there was any evidence to support the argument that Gray was within his curtilage.

It is necessary to describe the area where Chisum was killed and the circumstances present when police arrived on the scene, as gathered from the exhibits and testimony. Audrey Cooper resided in the other half of Gray's duplex. One of the State's exhibits shows the duplex belonging to Gray and Cooper, as well as two other duplexes, in a semicircle sharing one large parking lot just off James Circle. With respect to the duplex where Gray lived, the photographs show two short, straight sidewalks, leading from the parking lot to his and Cooper's front doors. The sidewalks are separated by grass on each side and in the middle. Gray's car was backed into a spot in the parking lot directly outside his front door. When police arrived on the scene, a firearm and magazine were found on the patio beside a chair next to Gray's front door. With respect to Chisum's car, which had come to rest against a fence across the street, there was one bullet hole above the passenger's side door handle, two bullet holes in the driver's side window, and two bullet holes in the windshield. Four spent shell casings were found in the parking lot and in the grass near the sidewalk leading to Cooper's side of the duplex. One live round was found in the grass between the sidewalks.

1. *Failure to proffer entire instruction*

A party is entitled to an instruction on a defense if there is sufficient evidence to raise a question of fact or if there is any supporting evidence for the instruction. *Douglas*, *supra*. Our case law is clear that a party is entitled to a jury instruction when it is a correct statement of law and when there is some basis in the evidence to support giving the instruction. *Hamilton v. State*, 97 Ark. App. 172, 245 S.W.3d 710 (2006). A circuit court's ruling on

9

whether to submit a jury instruction will not be reversed absent an abuse of discretion. *Kinsey v. State*, 2016 Ark. 393, 503 S.W.3d 772.

At trial, in denying the defense's request to instruct the jury that Gray had no duty to retreat from his curtilage, the circuit court relied on *Moody v. State*, 2014 Ark. App. 538, 444 S.W.3d 389, in which this court held that the circuit court did not err in refusing to include the optional curtilage language in a jury instruction on justification because the evidence did not support it. In that case, Moody had reinitiated a confrontation with a group of females with whom she had earlier had a verbal and physical altercation. Later, two of those females were sitting in the shade on the fence of a nearby apartment complex. Moody walked through a breezeway of an apartment unit toward the fence and shot one of the females. Moody claimed that she was within her apartment's curtilage because she was near her apartment when the shooting took place; however, the evidence showed that she had not gone to her apartment and that the breezeway was a common area of a separate apartment unit.

On direct appeal, Gray argued that the circuit court had abused its discretion in refusing to include the curtilage language with the justification instruction; however, his court held that trial counsel's failure to proffer the entire model instruction as it related to curtilage precluded this court's review of the merits of his argument. *Gray I*, *supra*. Thus, in his petition for postconviction relief, Gray argued that trial counsel was ineffective for failing to proffer and include in the record the entire jury instruction on justification, including the curtilage language. He contended that the failure to preserve the error was not an objectively reasonable trial strategy and that there was a reasonable probability of a different outcome,

but for counsel's error. Gray argued that *Moody* is distinguishable and was an improper use of precedent by analogy because *Moody* discussed curtilage in terms of Fourth Amendment privacy rights. Gray maintained that the evidence showed that he was on his curtilage within twenty feet of his front door in the parking spot assigned to his residence, as argued by trial counsel without objection.

In its order denying relief, the circuit court found that there was no rational basis for instructing the jury that Gray had no duty to retreat from his curtilage because the evidence demonstrated that Gray had shot Chisum from a common area of a separate unit in that he was in the parking lot near his neighbor's yard, which was not shown to have been conveniently or habitually used by him for his residential purposes.

On appeal, Gray argues that there was no definitive evidence from either of the State's witnesses as to where he was standing when he fired the shots that killed Chisum and that the prosecutor failed to have him identify where he had been standing other than to say that he was "there" because of the location of the shell casings. He then argues for the first time on appeal about the unreliability of using shell casings to determine where a shooter was standing when shots were fired and points out that there was no evidence about the distance shell casings travel when they land or whether the shell casings here were in the same location as when they were found by the crime-scene investigators. Gray maintains that the evidence showed that he was on the curtilage of his dwelling in that he was "in a grassy area in front of his blue chair."

Ineffective assistance of counsel cannot be established by a mere showing of error by counsel or by revealing that counsel's failure to object prevented an issue from being

addressed on appeal. *Thomas v. State*, 330 Ark. 442, 954 S.W.2d 255 (1997). To prevail on a claim of ineffective assistance of counsel based on counsel's failure to preserve an issue for appeal, a petitioner must show that, had the issue been preserved, the appellate court would have reached a different decision. *Strain v. State*, 2012 Ark. 42, 394 S.W.3d 294.

Like *Moody*, the circuit court here rejected Gray's notion that, because he was near his residence when he killed Chisum, he was within the curtilage of his dwelling. Although the facts here differ from the *Moody* facts in some respects, we agree with the circuit court that the evidence did not support including the optional curtilage language with the justification instruction. Two shell casings were found in the parking lot, two shell casings were found on the grass on the far side of Cooper's sidewalk near the curb, and a live round was found in the grass separating the two sidewalks. The only evidence before the circuit court was Gray's testimony that he shot near where the shell casings were located and explained that the live round was in the grassy area separating the sidewalks because, as he was walking to his blue chair to put the gun down *after the fatal shooting*, the live round was ejected when he removed the clip from the gun. Again, the evidence was that the shell casings were in front of Cooper's dwelling—an area that the circuit court found was not within Gray's curtilage. There was no evidence as to where the shots would have been taken to account for the location of the shell casings. Nevertheless, Gray is now describing that grassy section near his front door as the area from which he shot Chisum. We agree with the circuit court that the evidence indicates that the shooting took place in a common area in a parking lot in front of Cooper's side of the duplex. Accordingly, Gray was not entitled to a justification instruction that included the optional curtilage language. We

cannot say that the circuit court clearly erred in concluding that Gray failed to establish that his trial counsel was ineffective for failing to proffer the entire instruction.

2. *Failure to request reckless-manslaughter instruction*

The circuit court instructed the jury on first-degree murder, of which Gray was convicted, as well as the lesser-included offenses of second-degree murder and extreme-emotional-disturbance manslaughter. In connection with the justification instruction, the circuit court instructed the jury that "reasonably believes" or "reasonable belief" means the belief that an ordinary, prudent person would form under the circumstances in question and not one recklessly or negligently formed. Trial counsel did not request what would have been an alternative instruction pursuant to Ark. Code Ann. § 5-10-104(a)(3) (Repl. 2013), which provides that a person commits manslaughter if he or she recklessly causes the death of another person.

In his petition for postconviction relief, Gray argued that the jury should have been instructed on reckless manslaughter, or "imperfect self-defense," as an alternative to extreme-emotional-disturbance manslaughter. He cited *Harshaw v. State*, 344 Ark. 129, 39 S.W.3d 753 (2001), for the proposition that the plea of self-defense raises the issue of manslaughter because if one acts too hastily and without due care in assaulting another, even though he believes that he is about to be assaulted by the other, he is not justified in taking human life and is guilty of manslaughter. Gray argued that the jury had been given the definition of "curtilage" but had not been told the significance of it in relation to his justification claim and that the jury had not been told that his negligence, if any, which

would disqualify him from claiming justification, would not require it to completely reject a claim for reckless manslaughter.

In denying Gray's petition for Rule 37 relief, the circuit court concluded that the "skip rule" barred the giving of the instruction and that Gray could not demonstrate prejudice because he had been convicted of a greater offense. As a general rule, when the jury convicts a defendant of first-degree murder, even though an instruction on the lesser-included offense of second-degree murder has been given, any error resulting from the failure to instruct on the still lesser-included offense of manslaughter is cured. *Sims v. State*, 2015 Ark. 363, 472 S.W.3d 107. This is commonly referred to as the "skip rule." *Id.*

On appeal, Gray argues that trial counsel was ineffective for failing to request an instruction on reckless manslaughter, or "imperfect self-defense." He contends that there was evidence that he responded to a perception that Chisum would possibly kill him by running over him with her car and that he had shot at her car in response to that fear but not with the intent to kill her. Gray further asserts that a reckless-manslaughter instruction was warranted because the jury could have concluded that he was reckless in forming the belief that he was under a threat sufficient to warrant the use of deadly force. He states that the jury could have believed that he used excessive force because he recklessly misperceived the significance of Chisum's threat once she had fled from his duplex or that he could have retreated back into his duplex with complete safety—having no right to engage in self-defense while outside his home because jurors had not been instructed on the curtilage concept of justification.

14

Gray points to a footnote in *Boyle v. State*, 363 Ark. 356, 214 S.W.3d 250 (2005), in which the supreme court stated that extreme-emotional-disturbance manslaughter "does not fall within the reasoning of the skip rule." *Id.* at 364 n.2, 214 S.W.3d at 254 n.2. Gray contends that, likewise, the reasoning does not apply to reckless manslaughter because "imperfect self-defense" is triggered by the instruction on justification and is not simply a matter of a reduced mental state. Gray argues that there was no strategically sound reason for trial counsel not to have pursued an instruction on reckless manslaughter or "imperfect self-defense."

In *Rainey v. State*, 310 Ark. 419, 837 S.W.2d 453 (1992), which was cited in the *Boyle* footnote, the supreme court in dicta said that the skip rule would likely apply to a reckless-manslaughter instruction, where the defendant had been convicted of first-degree murder, because recklessness is a less culpable mental state than purposefulness, and "it fits within the chain. It is a truly lesser included offense." *Id.* at 425, 837 S.W.2d at 456–57.

Even if the skip rule does not apply here, there was no rational basis to support an instruction for reckless manslaughter. Here, the evidence showed that Gray fired four shots into Chisum's vehicle, including two shots through the windshield. A crime-scene investigator testified about the trajectory of the bullets and his theory that the vehicle was backing away when it was shot in the front. There was no evidence to support a reckless-manslaughter instruction. *Norris v. State*, 2009 Ark. 174, 368 S.W.3d 52; *Cobb v. State*, 340 Ark. 240, 12 S.W.3d 195 (2000). Counsel cannot be found to be ineffective for failing to make an argument that is without merit. *Ortega v. State*, 2017 Ark. 365, 533 S.W.3d 68. We

cannot say that the circuit court clearly erred in its conclusion that Gray did not prove ineffective assistance of counsel with this point.

### 3. *Failure to object on due-process grounds*

Justification is not an affirmative defense that must be pled but becomes a defense when any evidence tending to support its existence is offered to support it. *Anderson v. State*, 353 Ark. 384, 108 S.W.3d 592 (2003). By statute, justification, such as self-defense, is considered an element of the offense and, once raised, must be disproved by the prosecution beyond a reasonable doubt. *Schnarr v. State*, 2018 Ark. 333, 561 S.W.3d 308.

In his petition for postconviction relief, Gray argued that trial counsel was ineffective for not raising a due-process objection to the circuit court's omission of the curtilage language from the justification instruction because it impermissibly lessened the State's burden of disproving Gray's defense beyond a reasonable doubt. He contended that any diminution of the State's burden of proof results in a violation of due process. Gray asserted that, by failing to raise an objection, trial counsel did not preserve a claim of federal constitutional error. *Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000).

The circuit court found that there was no rational basis for an instruction that one has no duty to retreat from his curtilage given the evidence that Gray had shot and killed Chisum from a common area in front of a separate unit. The circuit court further pointed out that Gray had not been prohibited from presenting his defense and therefore concluded that there was no due-process violation.

On appeal, Gray asserts that the circuit court altered its theory of why he was not entitled to the curtilage language when it noted that "Gray offered no evidence" that he

conveniently or habitually used the area in front of Cooper's side of the duplex for his residential purposes. Gray contends that this shifted the burden to him to prove an essential element of his defense, which violates due process.

In determining if the circuit court erred in refusing an instruction, the test is whether the omission infects the entire trial such that the resulting conviction violates due process. *Hamilton*, *supra*. We agree with the circuit court that there was no violation of due process, both because Gray was not prohibited from presenting his self-defense theory, and because the evidence did not support instructing the jury on the optional curtilage language, as in *Moody*. The evidence was that Gray shot Chisum in a common parking lot near his neighbor's yard, not on his curtilage; the State was not required to disprove this aspect of the defense because it had not first been raised by the undisputed evidence. We cannot say that the circuit court erred in concluding that Gray did not demonstrate ineffective assistance when trial counsel failed to raise a due-process objection.

4. *Failure to preserve error resulted in prejudice with firearm enhancement*

In his petition for postconviction relief, Gray argued that trial counsel was ineffective in not preserving error with respect to deletion of the curtilage language from the justification instruction, which prejudiced him in the jury's firearm-enhancement decision. He asserted that "[b]y not explaining to jurors that his use of deadly force outside his residence, but on the curtilage, could afford additional support for his justification claim, jurors were less likely to impose a less onerous punishment on the firearm enhancement than the maximum by finding that he was negligent in the use of deadly force, for instance,

17

but that his use of deadly force was the result of negligence, rather than intent, warranting a lesser sentence."

The circuit court ruled that Gray's additional term of fifteen years' imprisonment resulted from evidence at trial that he had employed a firearm in causing Chisum's death and that it was speculation that the outcome would have been different had the jury been instructed on the curtilage concept of the justification defense. The circuit court reiterated that Gray had shot and killed Chisum in a common area that was not part of his curtilage.

On appeal, Gray adopts his arguments from his first and second points and contends that the omission of the curtilage language from the justification instruction prejudiced him when it came to the firearm enhancement. He contends that he would have been entitled to resentencing on the firearm enhancement if convicted after a new trial. We agree with the circuit court that Gray's assertion—that the jury would have been lenient had it been given a justification instruction that included the curtilage concept—is speculative. *See Perry v. State*, 2011 Ark. 434. Further, this issue is covered by Ark. Code Ann. § 16-90-120(d) (Repl. 2021), which provides that any reversal of a defendant's conviction for the commission of the felony shall automatically reverse the prison sentence that may be imposed under this section. We cannot say that the circuit court erred in concluding that Gray failed to establish ineffective assistance of counsel through this point.

III. *Inconsistent Application of Rule of Procedural Default*

In his petition for postconviction relief, Gray argued that he was denied due process of law and that his implied right of appeal was violated when this court unreasonably applied a procedural rule of default to deny review of his argument on appeal. He maintained that

18

both the circuit court and the appellate court were sufficiently apprised of his complaint without the need to tender the entire instruction. Gray asserted that Arkansas courts apply different rules for preservation of requested instruction claims in civil and criminal cases.

In denying relief as to Gray's fifth ground, the circuit court found that Gray was not asserting ineffective assistance of counsel and instead was only inviting the appellate court to consider the issue of whether a sufficient record on appeal was made when his trial counsel failed to proffer an instruction regarding the curtilage concept.[2]

On appeal, Gray complains that the rule of procedural default—failure to proffer a jury instruction results in nonpreservation of an issue for appeal—is not consistently applied to both civil and criminal trials. He cites *Tandy Corp. v. Bone*, 283 Ark. 399, 678 S.W.2d 312 (1984), and *Grubbs v. Hindes*, 101 Ark. App. 405, 278 S.W.3d 575 (2008), for the proposition that there is no requirement that a party proffer a jury instruction in a civil case and that all that is required is that the party timely object and state valid reasons for the objection.

First, these cases are inapposite,[3] and the appellate courts have already denied Gray's petitions for rehearing and review on this very subject. Second, Gray cannot raise this argument in a Rule 37 proceeding because it is an alleged trial error that should have been

---

[2]Gray filed a motion for modification of the order denying postconviction relief seeking a specific ruling on the constitutional issue raised and suggesting that the circuit court had not provided sufficient information for the reviewing court. The circuit court did not rule on the motion.

[3]*See Tandy*, *supra* (reversing and remanding for new trial because appellants were not required to proffer jury instruction *in substitution* to appellees' instruction, which was an erroneous statement of the law), and *Grubbs*, *supra* (recognizing that appellees were not required to proffer *an alternative* jury instruction when objecting to appellant's instruction).

presented on direct appeal. The State first raised the preservation issue in its brief on direct appeal, to which Gray did not reply. Rule 37 does not provide an avenue to raise matters that could have been raised on direct appeal. *Beulah v. State*, 352 Ark. 472, 101 S.W.3d 802 (2003). This argument could have been raised by Gray on direct appeal, and we will not address it in this appeal from the denial of postconviction relief.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*J. Thomas Sullivan*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Sr. Ass't Att'y Gen., for appellee.